No. 26-70004

IN THE

# United States Court of Appeals for the Fifth Circuit

EDWARD LEE BUSBY,

*Petitioner–Appellant,*

v.

ERIC GUERRERO, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

*Respondent–Appellee.*

On Appeal from the United States District Court for the Northern
District of Texas, Fort Worth Division, Cause No. 4:09-CV-160

## OPPOSITION TO APPLICATION FOR A CERTIFICATE OF APPEALABILITY AND REQUEST FOR A STAY OF EXECUTION

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division

JEFFERSON CLENDENIN
Assistant Attorney General
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936–1400
jay.clendenin@oag.texas.gov

*Counsel for Respondent–Appellee*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

*Respondent–Appellee*
Eric Guerrero, Director
TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

*Counsel for Respondent–Appellee*
Jefferson Clendenin, Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL OF TEXAS

*Petitioner–Appellant*
Edward Lee Busby

*Counsel for Petitioner–Appellant*
David R. Dow
Jeffrey R. Newberry

s/ Jefferson Clendenin
JEFFERSON CLENDENIN
Assistant Attorney General

i

**STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Federal Rule of Appellate Procedure 34(a)(2)(C), oral argument should be denied because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument."

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ...........................................i

STATEMENT REGARDING ORAL ARGUMENT ...............................ii

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES..................................................................v

INTRODUCTION...................................................................................1

STATEMENT OF JURISDICTION.......................................................2

STATEMENT OF THE ISSUES.............................................................3

STATEMENT OF THE CASE ................................................................3

I.    Procedural History .......................................................................3

II.   Statement of Facts .......................................................................8

    A.   Evidence at guilt-innocence ..................................................8

    B.   Evidence at punishment .........................................................9

    C.   Evidence regarding Busby's *Atkins* claim ..........................10

SUMMARY OF THE ARGUMENT ......................................................17

STANDARD OF REVIEW...................................................................18

ARGUMENT .......................................................................................19

I.    The District Court Properly Concluded that Busby's Rule 60(b)(6) Motion Was a Successive Petition .................................................19

II.    The District Court Properly Concluded that Busby's Rule 60(b)(6) Motion Was Untimely ....................................................................... 32

III.   The District Court Properly Determined that Busby Was Not Entitled to Relief Under Rule 60(b)(6) .............................................. 35

    A.    Changes in decisional law do not constitute extraordinary circumstances ................................................................................ 35

    B.    Busby failed to identify any extraordinary circumstance .... 36

    C.    Busby's *Atkins* claim is meritless ......................................... 42

        1.    Busby does not have significantly subaverage intellectual functioning ................................................. 43

        2.    Busby has not demonstrated he has significant deficits in adaptive behavior ..................................................... 45

IV.    Busby Is Not Entitled to a Stay of Execution .............................. 49

CONCLUSION .................................................................................... 51

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ........................ 52

CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARDS .............................................................................................. 52

CERTIFICATE OF SERVICE ............................................................. 53

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Adams v. Thaler*, 679 F.3d 312 (5th Cir. 2012) ..................................... 19

*Atkins v. Virginia*, 536 U.S. 304 (2002) ..................................................... 1

*Ayestas v. Davis*, 584 U.S. 28 (2018) ................................................ *passim*

*Barefoot v. Estelle*, 463 U.S. 880 (1983) .................................................. 49

*Brumfield v. Cain*, 576 U.S. 305 (2015) ................................................... 11

*Buck v. Davis*, 580 U.S. 100 (2017) .............................................. 18, 35, 40

*Bucklew v. Precythe*, 587 U.S. 119 (2019) ................................................ 50

*Clark v. Davis*, 850 F.3d 770 (5th Cir. 2017) ..................................... 32, 33

*Commonwealth v. Flor*, 259 A.3d 891 (Pa. 2021) ................................... 43

*Crutsinger v. Davis*, 929 F.3d 259 (5th Cir. 2019) ........................... 21, 24

*Crutsinger v. Davis*, 936 F.3d 265 (5th Cir. 2019) ........................... 35, 36

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ......................................... 29, 38

*Diaz v. Stephens*, 731 F.3d 370 (5th Cir. 2013) ..................................... 39

*Dunn v. Reeves*, 594 U.S. 731 (2021) ...................................................... 44

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) ...................... 22

*Estrada v. State*, 313 S.W.3d 274 (Tex. Crim. App. 2010) .................... 41

*Ex parte Cathey*, 451 S.W.3d 1 (Tex. Crim. App. 2014) ................. *passim*

*Felker v. Turpin*, 518 U.S. 651 (1996) ..................................................... 19

*Franklin v. Johnson*, 839 F.3d 465 (6th Cir. 2016) .......................... 28, 30

*Gamboa v. Davis*, 782 F. App'x 297 (5th Cir. 2019) ................... 20, 24, 25

*Gomez v. U.S. Dist. Court for Northern Dist of California,* 503 U.S. 653 (1992) .................................................................................................... 49

*Gonzales v. Davis*, 788 F. App'x 250 (5th Cir. 2019) ........................ 25, 30

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) .......................................... *passim*

*Haliburton v. State*, 331 So. 3d 640 (Fla. 2021) ..................................... 43

*Hall v. Florida*, 572 U.S. 701 (2014) ............................................... 44, 45

*Haynes v. Davis*, 733 F. App'x 766 (5th Cir. 2018) ................................ 42

*Hess v. Cockrell*, 281 F.3d 212 (5th Cir. 2002) ................................. 34, 35

*Hill v. McDonough,* 547 U.S. 573 (2006) .......................................... 49, 50

*Hilton v. Braunskill*, 481 U.S. 770 (1987) .............................................. 49

*Ibarra v. Thaler*, 691 F.3d 677 (5th Cir. 2012) ...................................... 29

*In re Coleman*, 768 F.3d 367 (5th Cir. 2014) .......................................... 29

*In re Edwards*, 865 F.3d 197 (5th Cir. 2017) .......................................... 18

*In re Hill*, 715 F.3d 284 (11th Cir. 2013) ............................................... 28

*In re Pruett*, 784 F.3d 287 (5th Cir. 2015) .......................................... 2, 31

*In re Segundo*, 757 F. App'x 333 (5th Cir. 2018) ....................... 23, 25, 40

*In re Young*, 789 F.3d 518 (5th Cir. 2015) ....................................... 27, 28

*Jackson v. Lumpkin*, 25 F.4th 339 (5th Cir. 2022) .................................. 18

*Lewis v. Quarterman*, 541 F.3d 280 (5th Cir. 2008) .............................. 30

*Lewis v. Thaler*, 701 F.3d 783 (5th Cir. 2012) ...................................... 29

*Mamou v. Davis*, 742 F. App'x 820 (5th Cir. 2018) ................................ 38

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ............................................ 18

*Monteon-Camargo v. Barr*, 918 F.3d 423 (5th Cir. 2019) ...................... 22

*Moore v. Texas*, 581 U.S. 1 (2017) ................................................. 44, 45

*Morris v. Dretke*, 413 F.3d 484 (5th Cir. 2005) ..................................... 30

*Nelson v. Campbell*, 541 U.S. 637 (2004) ......................................... 48, 49

*Nelson v. Lumpkin*, 72 F.4th 649 (5th Cir. 2023) ................................. 29

*Nken v. Holder*, 556 U.S. 418 (2009) ..................................................... 49

*Paredes v. Stephens*, 587 F. App'x 805 (5th Cir. 2014) .......................... 33

*Petetan v. State*, 622 S.W.3d 321 (Tex. Crim. App. 2021) ................ 46, 48

*Pruett v. Stephens*, 608 F. App'x 182 (5th Cir. 2015) ....................... 33, 34

*Quince v. State*, 241 So. 3d 58 (Fla. 2018) ........................................... 43

*Raby v. Davis*, 907 F.3d 880 (5th Cir. 2018) ........................................ 40

*Ramirez v. Davis*, No. 2:12-CV-410, 2019 WL 13438456 (S.D. Tex. Jan. 3, 2019) ...................................................................................................... 37

*Raulerson v. Warden*, 928 F.3d 987 (11th Cir. 2019) ........................... 43

*Ruiz v. Lumpkin*, 653 F. Supp. 3d 331 (N.D. Tex. Jan. 27, 2023) .......... 31

*Runnels v. Davis*, 746 F. App'x 308 (5th Cir. 2018)................... 26, 29, 33

*Segundo v. Davis*, No. 4:10-CV-970-Y, 2018 WL 4623106 (N.D. Tex. Sept. 26, 2018) ...................................................................................... 23

*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. 1981)................... 39

*Sibron v. New York*, 392 U.S. 40 (1968)................................................ 42

*Slack v. McDaniel*, 529 U.S. 473 (2000)................................................ 18

*Smith v. Duckworth*, 824 F.3d 1233 (10th Cir. 2016)........................... 43

*Tamayo v. Stephens*, 740 F.3d 986 (5th Cir. 2014)............................... 33

*Thorson v. State*, 76 So. 3d 667 (Miss. 2011) ...................................... 43

*Trottie v. Stephens*, 581 F. App'x 436 (5th Cir. 2014)........................... 33

*Walker v. Epps*, 287 F. App'x 371 (5th Cir. 2008)................................. 51

*White v. Lumpkin*, No. 24-70005, 2024 WL 4343615 (5th Cir. Sept. 29, 2024) ...................................................................................... 43

*Will v. Lumpkin*, 978 F.3d 933 (5th Cir. 2020)............................... 20, 24

*Wright v. Sec'y, Dept. of Corr.*, No. 20-13966, 2021 WL 5293405 (11th Cir. Nov. 15, 2021) ...................................................................... 43

**Statutes and Rules**

18 U.S.C. § 3599 .................................................................................... 36

28 U.S.C. § 1631 .................................................................................... 19

28 U.S.C. § 2244(b)(1)...................................................................... 26, 28

28 U.S.C. § 2253(c)(1)(A) ........................................................................ 2

28 U.S.C. § 2253(c)(2) ............................................................................ 2

28 U.S.C. § 2254(d) ............................................................................... 37

Fed. R. Civ. P. 60(b) ....................................................................... *passim*

## INTRODUCTION

Petitioner–Appellant Edward Lee Busby was convicted of capital murder and sentenced to death for the murder of Laura Crane. He is scheduled to be executed after **6:00 p.m., May 14, 2026**. Busby was denied federal habeas relief more than a decade ago, ROA.3316–66, and his federal habeas proceedings concluded more than six years ago, ROA.3439. Busby initiated subsequent state habeas proceedings a year later, ROA.4960, which concluded in November 2025, *Busby v. Texas*, 146 S. Ct. 371 (Nov. 10, 2025). He then waited six months to seek relief from the federal district court's 2015 judgment under Federal Rule of Civil Procedure 60(b), which request was predicated on the argument that the district court's denial of funding in 2011 was rendered incorrect by the Supreme Court's 2018 decision in *Ayestas v. Davis*, 584 U.S. 28 (2018). ROA.3441-82.

The lower court denied Busby's motion for relief from judgment. ROA.3601-09. The court first found Busby's motion was actually a successive habeas petition because it attacked the previous merits decision denying his claim of intellectual disability under *Atkins v. Virginia*, 536 U.S. 304 (2002). ROA.3606. Second, the court found the

1

motion untimely. ROA.3606-07. Third, the court found an absence of an extraordinary circumstance warranting relief from judgment. ROA.3607. The court denied a certificate of appealability (COA) and transferred the case to this Court to determine whether Busby was entitled to authorization to file a successive habeas petition. ROA.3608-09.

Busby failed to seek authorization in this Court to file a successive habeas petition. Instead, he sought a COA with respect to the lower court's determinations that his motion for relief from judgment was a successive petition, untimely, and meritless. *See generally* ECF No. 21 (Appl.). This Court should deny Busby's request for a COA because the district court's conclusions were undebatably correct. This Court should also deny Busby's terse request for a stay of execution.

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 2253(c)(1)(A), (c)(2). To the extent Busby appeals the district court's transfer order, this Court also has jurisdiction. *See In re Pruett*, 784 F.3d 287, 290 (5th Cir. 2015).

## STATEMENT OF THE ISSUES

1.      Could reasonable jurists debate the district court's conclusion that Busby's motion for relief from judgment was a successive federal habeas petition?

2.      Could reasonable jurists debate the district court's conclusion that Busby's motion for relief from judgment was untimely?

3.      Could reasonable jurists debate the district court's conclusion that Busby's motion for relief from judgment did not present an extraordinary circumstance?

## STATEMENT OF THE CASE

### I.    Procedural History

Busby was convicted and sentenced to death in 2005, for the murder of seventy-eight-year-old Laura Crane. *See Busby v. State*, 253 S.W.3d 661, 663 (Tex. Crim. App. 2008), *cert. denied*, 555 U.S. 1050 (2008). The conviction and sentence were affirmed on direct appeal in 2008. *Id.* Busby's initial state habeas application was denied in 2009. *Ex parte Busby*, No. WR-70,747-01, 2009 WL 483096, at *1 (Tex. Crim. App. Feb. 25, 2009).

Busby initiated federal habeas proceedings in 2009. *See* ROA.22-23. In 2011, Busby requested funding from the district court for the purpose of obtaining an expert opinion about whether Busby was intellectually disabled. ROA.1633. The court denied the motion, assuming the claims raised in Busby's petition were "procedurally viable." ROA.1871. In doing so, the court described the extensive evidence developed prior to Busby's trial (Dr. Timothy Proctor's psychological testing of Busby) and during his state habeas proceedings (Dr. Gilda Kessner's review of test data and testimony, Toni Knox's new mitigation investigation, Dr. Gilbert Martinez's administration of the WAIS-IV, and Dr. Bekh Bradley-Davino's "comprehensive report" based on ten hours of clinical interviews, medical records, prior psychological reports, and several statements from individuals who knew Busby during his developmental period), ROA.1872-75, which Busby litigated with the benefit of funding from the state habeas court, ROA.1873. The district court noted that Busby failed to explain why his already-developed evidence was insufficient for purposes of his intellectual disability claim. ROA.1875-76. Because the funding Busby requested would only have

supplemented evidence he had already developed, the court denied his request for funding. ROA.1876.

The district court later stayed its proceedings to allow Busby the opportunity to exhaust claims, ROA.1884, and directed him to "observe state requirements for the appointment of counsel and compensation of services before the state court." ROA.1881. Busby then filed a subsequent state habeas application, which the Texas Court of Criminal Appeals (TCCA) dismissed as an abuse of the writ. ROA.4468-69. After the district court reopened the habeas proceedings, ROA.2150-51, Busby again requested funding but only with respect to his ineffective-assistance claim, ROA.2169-79. The court later denied Busby's renewed funding request, ROA.2332-38, and denied Busby habeas relief, ROA.3366.

This Court granted Busby a COA after which it affirmed the district court's denial of relief, *Busby v. Davis*, 892 F.3d 735 (5th Cir. 2018), in an opinion that was withdrawn and superseded following Busby's filing of a petition for rehearing, *Busby v. Davis*, 925 F.3d 699, 702 (5th Cir. 2019), *cert. denied*, 589 U.S. 1141 (2020).

Busby's execution was then scheduled for May 6, 2020. Ord., *Texas v. Busby*, No. 0920589A (Crim. Dist. Ct. No. 2, Tarrant Cnty., Texas Jan.

28, 2020). The TCCA granted a sixty-day stay of Busby's execution during the then-emerging COVID-19 pandemic. Ord., *In re Busby*, No. WR-70,747-03 (Tex. Crim. App. Apr. 27, 2020). Busby's execution was later scheduled for February 10, 2021. Ord., *Texas v. Busby*, No. 0920589A (Crim. Dist. Ct. No. 2, Tarrant Cnty., Texas Oct. 15, 2020). Prior to that date, Busby filed in the TCCA a motion for a stay of execution due to the COVID-19 pandemic, Mot. for Stay, *Busby v. Texas*, No. WR-70,747-04 (Tex. Crim. App. Jan. 8, 2021), and a motion for a stay of execution asserting his desire to have his spiritual advisor accompany him in the execution room, Mot. for Stay, *Busby v. Texas*, No. WR-70,747-05 (Tex. Crim. App. Jan. 15, 2021). The motions were denied.

Busby also filed a motion to intervene and a motion for a stay of execution in a civil rights action involving a claim challenging the Texas Department of Criminal Justice's (TDCJ) former policy regarding the presence of spiritual advisors during executions, which were denied. Ord., *Gutierrez v. Saenz, et al.*, No. 1:19-CV-185 (S.D. Tex. Jan. 29, 2021), ECF No. 132. Busby then filed in federal district court a complaint and a motion for a stay of execution regarding TDCJ's execution policy. Compl., *Busby v. Collier, et al.*, No. 4:21-CV-297 (S.D. Tex. Jan. 29, 2021), ECF

6

No. 1. The motion for a stay of execution was dismissed after the TCCA stayed Busby's execution, Ord., *Busby v. Collier, et al.*, No. 4:21-CV-297 (S.D. Tex. Feb. 4, 2021), ECF No. 13, and Busby's complaint was ultimately dismissed as moot, Ord. on Dismissal, *Busby v. Collier, et al.*, No. 4:21-CV-297 (S.D. Tex. Sept. 16, 2021), ECF No. 54.

Busby also filed a motion for a stay of execution and a subsequent state habeas application raising an intellectual disability claim prior to his scheduled execution in 2021. ROA.4960-5020. The TCCA granted the motion for a stay and remanded Busby's claim for review on the merits. ROA.5525-27. On remand, the trial court entered findings and conclusions recommending that Busby's claim be denied. ROA.4906-48. The TCCA adopted most of the trial court's findings and conclusions, and it denied Busby's claim based on the adopted findings and conclusions and the TCCA's own review. ROA.5432-34. Busby filed a petition for a writ of certiorari, which was denied. *Busby v. Texas*, 146 S. Ct. 371 (Nov. 10, 2025).

The state trial court later entered an order setting Busby's execution for May 14, 2026. Ord. Setting Execution Date, *Texas v. Busby*, No. 0920589A (Crim. Dist. Ct. No. 2, Tarrant Cnty., Texas Dec. 10, 2025).

Busby then filed in the lower court a motion for relief from judgment on April 2, 2026. ROA.3441-82. The court denied the motion and a COA because the motion was a successive habeas petition, was untimely, and failed to demonstrate any extraordinary circumstance. ROA.3608. The court transferred the case to this Court for a determination as to whether Busby was authorized to file a successive habeas petition. ROA.3609. Busby did not file a motion for authorization to file a successive habeas petition. *See In re Busby*, No. 26-10354 (5th Cir. Apr. 23, 2026), ECF No. 14-1 (order granting Busby an extension of time to April 27, 2026, to file a motion for authorization). Instead, Busby filed an Application for a COA. *See generally* Appl. The instant opposition follows.

## II.   Statement of Facts

### A.   Evidence at guilt-innocence

The evidence shows that on or about January 30, 2004, [Busby] and a female accomplice [Kathleen Latimer] abducted a seventy-eight-year-old woman in Fort Worth, then robbed and murdered her. The elderly victim suffocated from having multiple layers of duct tape wrapped tightly over her entire face that covered her nose and mouth. According to the medical examiner's testimony, approximately 23.1 feet of duct tape was wrapped around the victim's face with such force that her nose deviated from its natural position.

On February 1, 2004, an Oklahoma City police officer (Padgett) arrested [Busby] in Oklahoma City. . . . [Busby]

8

made various statements to the FBI, Oklahoma police, and Fort Worth detectives between February 1st and February 3rd. . . . On February 20th, [Busby] gave a written statement to the police and again admitted that he and [Latimer] abducted, robbed, and killed the victim. [Busby]'s February 3rd tape-recorded statement and his February 20th written statement portrayed [Latimer] as the leader of their criminal enterprise, with [Busby] following her instructions. However, [Busby] admitted in both of these statements that he wrapped the duct tape over the victim's face while also stating several times that he did not mean to kill her.

*Busby v. State*, 253 S.W.3d at 663–64.

## B.    Evidence at punishment

At Busby's trial, custodians of his school records testified that he had a mixed academic record, was required to repeat two grades, was frequently absent from school, and ultimately dropped out of school. They also noted that he was enrolled in special education classes for students with IQ's lower than average, but above 70. His special education teacher spoke to Busby's lack of support at home, his life as a "follower" in a segregated neighborhood, and her observation that he was a difficult student. The fact that Busby attempted to commit suicide on four occasions and was hospitalized on each occasion was presented to the jury. Busby's expert witness advised the jury that he had found "documented evidence of long-standing chronic alcohol abuse" and "longstanding and chronic" abuse of "essentially illegal drugs," meaning "[s]treet drugs."

The [S]tate introduced aggravation evidence at trial showing that Busby had an extensive criminal history and a violent nature. Busby previously pled guilty to a robbery in which he attacked the victim with a box cutter, causing the victim to be covered in blood from his [waist] up, then stole the victim's truck and other personal property[.] Busby

pleaded guilty to stealing donations from the Salvation Army. During his time in prison for these offenses, Busby was a violent and aggressive inmate. A Kmart employee testified that Busby once attempted to steal batteries and when he was confronted, he threatened the employee and his family. The State also showed that Busby committed acts of violence while acting as a "pimp" for Latimer and others, that he was a long-standing gang member, that he had violently assaulted and injured Latimer, and that he had been arrested multiple times on drug and weapons charges.

*Busby v. Davis*, 925 F.3d at 724 (footnotes omitted).

### C.    Evidence regarding Busby's *Atkins* claim

This Court summarized the evidence Busby presented in state court and during his federal habeas proceedings regarding his *Atkins* claim:

Busby was administered five separate IQ tests between 2001 and 2010. He scored 96 on an unknown IQ test in 2001, and the State offered to "forget about" that test, acknowledging that it was unreliable. . . . Prior to his criminal trial, three more IQ tests were administered to Busby. He received a full scale IQ of 77 on the WAIS-III, administered in 2005 by his expert witness at trial, Dr. Proctor. The standard error of measurement (SEM) for the WAIS-III is approximately "plus or minus five," according to Dr. Proctor's trial testimony. Busby's IQ was therefore in a range of 72–82, as measured by the WAIS-III. Busby asserted in his second state habeas petition that due to the "Flynn Effect," the score of 77 should be adjusted to 73.7. Weeks after Dr. Proctor's assessment, the State's psychologist re-administered the WAIS-III, and Busby scored 79. The IQ range would be 74–84, based on that test and its SEM.

Dr. Proctor administered a third IQ test on the eve of trial—the Beta-III—on which Busby scored 81. Proctor

10

testified that this score "correlates fairly well" with Busby's WAIS-III score. The SEM for the Beta-III is not in the record. Busby argued to the TCCA that "[an intellectual disability] expert would opine, however, that the Beta IQ test, because of its less comprehensive nature, is widely acknowledged to inflate IQ scores generally, to be subject to a higher Flynn Effect rate than the Wechsler scales, and to be less reliable overall than the Wechsler Scales." However, no expert did so opine in the state-court proceedings, and there was no evidence provided to the TCCA as to what the IQ range would be if the SEM were considered or if the Flynn Effect were accepted and applied. All that the TCCA had before it regarding the Beta-III test was the fact that Busby had scored 81 and the arguments of counsel attempting to discredit or explain that score. Even assuming that the SEM for the Beta-III test is similar to that for the WAIS-III, the IQ range would be 76–86. Such a range would be above the range of 75 or below that the Supreme Court has applied in its recent opinions regarding IQ scores in the context of an *Atkins* claim. The Supreme Court said in *Brumfield*[1] that evidence of an IQ score whose range, adjusted by the SEM, was above 75 "could render the state court's determination reasonable."

Busby provided arguments in his federal habeas petition regarding the Beta-III test and his score of 81 that were not presented to the TCCA. He asserted in federal court that the Beta-III had been "normed" seven years before it was administered to Busby, and that if adjusted for the Flynn Effect, the score would be 78.7. He did not point to any expert testimony or other evidence in the record that supports these arguments. Nor is there evidence as to the SEM of this test or the range of the score when the SEM is considered. Again, there was only argument of counsel. Busby was provided the opportunity to present whatever expert testimony he deemed necessary in the federal district court proceedings, and he did not present any additional evidence regarding this test. The

---

[1] *Brumfield v. Cain*, 576 U.S. 305 (2015).

11

only evidence that the TCCA and federal district court had was that Busby's full score IQ as measured by the Beta-III test was 81.

In 2010, immediately prior to filing his federal habeas petition, Busby was administered the WAIS-IV and scored a 74. The report of the clinician who administered this test reflects that, adjusted based on a 95% confidence interval for the WAIS-IV, Busby's full scale IQ range is 70–79, which the report characterizes as "Borderline."

Before the trial at which Busby was convicted, Proctor also administered the Wide Range Achievement Test, Third Edition, which measured Busby's educational abilities in reading, spelling and math. Busby tested at the fourth-grade level in reading, third-grade level in spelling, and sixth-grade level in math.

Busby argues that because the federal district court's analysis of the merits of the *Atkins* claim was based only on IQ scores, it follows that the district court also concluded that "the [T]CCA's analysis must have stopped at that point as well." First, it appears that the federal district court did consider Busby's achievement test scores, which were not IQ test scores. But in any event, we cannot assume that the TCCA considered only Busby's IQ scores and ignored other evidence in Busby's state habeas application. Nor can we assume that the TCCA ignored the *lack* of evidence in Busby's state habeas application. Not a single clinician opined that Busby is intellectually disabled, though there were three reports from mental health experts appended to Busby's second state habeas application. Based on the record presented to the TCCA, no clinician examined Busby's IQ scores, evidence of whether Busby has "adaptive deficits ('the inability to learn basic skills and adjust behavior to changing circumstances')", or whether there was an onset of adaptive deficits while Busby was a minor, and then reached the conclusion that Busby is intellectually disabled.

12

Busby retained Gilda Kessner, a Doctor of Psychology, and she submitted a report dated March 21, 2008. Though Busby did not claim in his first state habeas petition that he was intellectually disabled, he filed this report as part of the evidence in his first state habeas proceeding. The same report was an exhibit to his second state habeas application. Kessner's report reflects that she reviewed an array of Busby's records and the testimony of Dr. Proctor, who was an expert witness for Busby in his murder trial. Kessner's report concludes that the WAIS-III that Proctor administered to Busby was the current test at the time. Her report reflects that Proctor testified at trial that Busby scored 77 on that test, and that Proctor testified that Busby was not [intellectually disabled] because "the DSM-IV diagnosis of [intellectual disability] would be a score below 70." However, Kessner opined that Proctor had not accounted for a phenomenon known as the Flynn Effect, which posits that there is a rise or gain in IQ scores over time and that "[r]esearch literature has suggested that this figure is .3 per year beginning the year after the test is normed." Importantly, Kessner concluded that the 77 score on the WAIS-III "does not rule out a diagnosis of [intellectual disability]," and that "a thorough investigation into Mr. Busby's adaptive behavior history is necessary to make a proper determination." The report continued, "[a]t this time, I do not believe that has been accomplished." Her report said, "I am concerned that [ ] the apparent perfunctory reliance on the obtained score truncated the investigation into the possibility of the presence of [intellectual disability] in Mr. Busby." Kessner's report had explained that "the next version of the Wechsler series (WAIS-IV) will be available to clinicians in the fall of 2008." Her report concluded with this recommendation: "I would recommend a new evaluation with the WAIS-IV when it is available this fall so that the issue of the Flynn Effect and questions about the validity of the score can be avoided." Kessner's report addresses only one of the three broad criteria for diagnosing intellectual disability. As

13

to that criteria, the most she said was that the WAIS-III score of 77 did not "rule out" intellectual disability.

After Busby filed his federal habeas petition, he retained two other experts regarding his mental capacities, and their reports were also appended to Busby's second state habeas petition. The report of Gilbert Martinez reflects that he is a Ph.D., licensed psychologist, and clinical neuropsychologist, and that Busby "underwent standardized assessment of his intellectual functioning on February 11, 2010." The report is relatively brief and offers no opinion as to whether Busby is intellectually disabled. It reflects in a chart that Martinez administered the WAIS-IV, that Busby's full scale IQ score was 74, and that within a 95% confidence interval, his IQ score was 70–79. Under a column in this chart labelled "Qualitative Description," the word "Borderline" appears with regard to Busby's full scale IQ score. The report also reflects that Martinez administered a Test of Memory Malingering, and "[t]here was no evidence of misrepresentation of cognitive or intellectual functioning."

Federal habeas counsel also retained Bekh Bradley-Davino, Ph.D., who is a licensed clinical psychologist. Bradley-Davino spent ten hours evaluating Busby in person and reviewed a substantial amount of written material and records. Bradley-Davino prepared a 20-page report, most of which does not pertain to whether Busby is intellectually disabled. But in a section titled "Limited Intellectual Abilities and Academic Problems Became Apparent in Mr. Busby's Childhood and Continued into Adulthood," the report states that "[a] number of sources of data including school records, behavioral descriptions provided by Mr. Busby as well as his family, teachers, and peers, and results of standardized tests, indicate that at a young age Mr. Busby demonstrated significant signs of impaired/limited academic and intellectual/mental abilities." The report also recounts the results of the WAIS-IV IQ test administered by Martinez and its full scale IQ score of 74, and concludes that "[t]his score

14

reflects significant limitations in intellectual functioning, approximately two standard deviations below the mean." The report reflects that Busby was placed in special education by at least the seventh grade, that he had "significant problems in academic functioning beginning early," and that he could not understand some of the more complex plays during high school football practice. But there is no conclusion drawn from all of the facts in Bradley-Davino's report that Busby is intellectually disabled. Instead, the report closes with this recommendation: "I additionally strongly recommend further evaluation of Mr. Busby by an expert in [intellectual disability] in light of his clear history of extensive intellectual and adaptive functioning limitations."

*Id.* at 716–19 (footnotes omitted).

Following the TCCA's stay of Busby's execution in 2021, Dr. Martinez administered the WAIS-IV to Busby on which he obtained an FSIQ of 81, indicating "low average" intellectual functioning. ROA.3490. Dr. Martinez also administered the Wide Range Achievement Test-Fifth Edition (WRAT-5), which measured Busby's academic achievement and reflected low scores. ROA.3490. To assess Busby's adaptive functioning, Dr. Martinez interviewed Busby's sisters Tarsharn Busby and Kimiko Coleman, and he reviewed Busby's school records and declarations from family members and acquaintances of Busby. ROA.3491-3502. Ms. Busby and Ms. Coleman also completed the Adaptive Behavior Assessment System-Third Edition (ABAS-III), which indicated Busby's scores were

15

for the most part in the bottom tenth of a percentile of individuals of Busby's age. ROA.3502-07. Dr. Martinez concluded that the discrepancy between Busby's IQ scores of 74 (in 2010) and 81 (in 2022) was likely due to the Flynn Effect and the practice effect, though he did not suggest a numerical adjustment to Busby's FSIQ of 81 to account for the practice effect. ROA.3508. He opined that the FSIQ of 81 was consistent with the previously obtained FSIQ of 74 and that Busby's adjusted scores fell within the range of intellectual disability in the context of Busby's adaptive deficits. ROA.3508-09. Dr. Martinez also concluded the records, interviews, declarations, and testing indicated deficits in adaptive functioning. ROA.3509.

The State's expert, Dr. Antoinette McGarrahan, reviewed the historical data and Dr. Martinez's new report. ROA.3510-15. Dr. McGarrahan decided not to administer additional testing to Busby in light of the numerous assessments he had been given. ROA.3514. Dr. McGarrahan concluded Busby demonstrated "reduced intellectual abilities" and significant deficits in adaptive behavior, and she found the deficits were present during his developmental period. ROA.3514.

16

Therefore, she could not controvert Dr. Martinez's opinion that Busby met the diagnostic criteria for intellectual disability. ROA.3515.

## SUMMARY OF THE ARGUMENT

The district court properly concluded Busby's motion for relief from judgment was a successive habeas petition, was untimely, and failed to demonstrate any extraordinary circumstance. The motion was a successive petition because it challenged the earlier merits denial of Busby's *Atkins* claim, and it did not challenge any procedural ruling that precluded a merits ruling or allege a defect in the integrity of the initial proceedings. The motion was untimely because Busby took no action during his initial federal habeas proceedings to challenge the district court's denial of funding, he waited more than a year to file a subsequent state habeas application following the conclusion of his federal habeas proceedings, and he waited almost six months to file the motion for relief from judgment following the conclusion of the subsequent state habeas proceedings. Under this Court's precedent, the motion was indisputably untimely. The motion also did not identify any extraordinary circumstance, considering the state court appropriately considered all of

17

Busby's evidence and rejected the parties' recommendation to grant relief.

## STANDARD OF REVIEW

A COA can only issue if Busby shows reasonable jurists could debate whether the court below should have resolved his claims in a different manner or that this Court should encourage him to further litigate his claims. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). This standard applies to both merits and procedural rulings. *Buck v. Davis*, 580 U.S. 100, 122 (2017). If the ruling was procedural, Busby must show both that the procedural ruling is debatable and that it is debatable he stated a valid claim. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

A federal habeas petitioner may appeal a district court's transfer order without a certificate of appealability. *Jackson v. Lumpkin*, 25 F.4th 339, 340 (5th Cir. 2022). Review of a transfer order is de novo, as is review of the determination that a Rule 60(b) motion constitutes a successive habeas petition. *Id.*; *In re Edwards*, 865 F.3d 197, 202–03 (5th Cir. 2017) (per curiam). However, Busby has not appealed the district court's transfer order. Nonetheless, a habeas petitioner must "obtain leave from the court of appeals before filing a second habeas petition in the district

18

court." *Felker v. Turpin*, 518 U.S. 651, 664 (1996); *see Adams v. Thaler*, 679 F.3d 312, 321 (5th Cir. 2012). Otherwise, the district court lacks jurisdiction over the petition. *See Adams*, 679 F.3d at 321. Under 28 U.S.C. § 1631, a "district court must have lacked jurisdiction over the action" to have the authority to transfer a petition to this Court. *Adams*, 679 F.3d at 321.

## ARGUMENT

### I.    The District Court Properly Concluded that Busby's Rule 60(b)(6) Motion Was a Successive Petition.

A Rule 60(b) motion can be a disguised second-or-successive habeas petition if, for example, an inmate seeks to attack a previous merits resolution of his claims. *See Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005) ("A motion can also be said to bring a 'claim' if it attacks the federal court's previous resolution of a claim *on the merits*, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." (footnote omitted)). On the other hand, a court has jurisdiction to consider a Rule 60(b) motion so long as it does not attack the court's resolution of the merits of a claim but instead alleges a defect in the integrity of the court's prior

19

proceedings or challenges a procedural ruling that precluded a merits determination.[2] *Id.* at 532 nn.4–5; *Gamboa v. Davis*, 782 F. App'x 297, 300 (5th Cir. 2019). The district court properly concluded Busby's Rule 60(b) motion was a successive petition in the guise of a Rule 60(b) motion because it sought to revisit the merits of his *Atkins* claim. ROA.3606.

Busby's Rule 60(b) motion was ostensibly aimed at the lower court's denial in 2011 of his request for funding to support a claim under *Atkins*. ROA.3441-82. But given that Busby later obtained funding and a report from Dr. Martinez opining that he is intellectually disabled, it was plainly evident that the true purpose of Busby's motion was to relitigate the merits of his *Atkins* claim with that new evidence. ROA.3457 ("Following the remand, the state trial court at last granted Busby the funds necessary to obtain an opinion from an expert regarding whether Busby is intellectually disabled[.]"); *see also* ROA.1633 (Busby's

---

[2]    Busby does not allege the lower court's order denying his request for funding precluded a merits determination with respect to his *Atkins* claim, nor could he. *See* Appl. 16 ("It is true that the district court's error regarding Busby's funding decision did not preclude a ruling on the merits of Busby's claim as it then-existed[.]"). Although the lower court found Busby's claim procedurally barred, it determined Busby failed to show he is intellectually disabled. ROA.3347-53. Moreover, this Court addressed the merits of Busby's claim at length. *Busby v. Davis*, 925 F.3d at 714–20; *see Will v. Lumpkin*, 978 F.3d 933, 939 (5th Cir. 2020) ("The court's merits determination was not precluded; it was merely layered below a procedural disposition.").

application for funding to retain an expert to form an opinion as to whether Busby is intellectually disabled). Indeed, a substantial portion of Busby's motion—more than half, when excluding its introduction and background summary—was a recitation of the purported merits of his *Atkins* claim. ROA.3466-81. If the purpose of Busby's Rule 60(b) motion was not to revisit the merits of his *Atkins* claim, then the motion would have been for naught because there would be nothing left to do given that he has already obtained his sought-after funding and evidence. Busby's funding complaint was simply moot. This fact laid bare the true purpose of Busby's Rule 60(b) motion—another determination of the merits of his *Atkins* claim with the benefit of his newly obtained evidence, which is flatly prohibited by *Gonzalez*, 545 U.S. at 531.

In *Crutsinger v. Davis*, this Court held the petitioner's Rule 60(b) motion challenging the district court's denial of funding was not a successive petition even though it was "clear from his motion" that he "would seek to set aside" his conviction or sentence if he obtained substantial new evidence. 929 F.3d 259, 264–66 (5th Cir. 2019). This was so because the Rule 60(b) motion did "not present a revisitation of the merits" of the petitioner's claim but rather was "confined to the federal

21

district court's denial of funding in the first federal habeas proceeding." *Id.* at 265–66.

In the court below, Busby relied on this Court's holding in *Crutsinger* and the fact that his Rule 60(b) motion nominally challenged the lower court's denial of his request for funding. ROA.3461. As this Court has explained, however, "[t]he relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label." *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc) (quotation omitted). Busby's reliance on the Rule 60(b) label and his hollow argument that he challenged only the lower court's denial of funding should not avail him because the substance of his motion belied the label. In any event, Busby does not now argue that the lower court's conclusion that his Rule 60(b) motion was a successive petition was contrary to *Crutsinger*. *See generally* Appl. Indeed, even Busby's reply brief in the lower court scarcely addressed the argument that his Rule 60(b) motion was a successive petition. ROA.3590-99. Busby has therefore waived any argument that the lower court's conclusion was contrary to this Court's holding in *Crutsinger*. *See Monteon-Camargo v. Barr*, 918 F.3d 423, 428 (5th Cir. 2019).

22

Moreover, the lower court's conclusion was consistent with this Court's other precedent. For example, in *In re Segundo*, this Court affirmed the district court's decision that a Rule 60(b) motion was a successive petition even though it challenged the district court's "use of an erroneous legal standard to deny him" funding.[3] 757 F. App'x 333, 335–36 (5th Cir. 2018). The district court concluded the Rule 60(b) motion was a successive petition "because it raise[d] and extensively brief[ed] various substantive claims[.]" *Id.* at 335. The petitioner argued his Rule 60(b) motion identified a defect in the integrity of the habeas proceedings—the denial of funding—and only substantively addressed his claims to demonstrate the extraordinary circumstances that warranted relief from judgment. *Id.* This Court rejected that "clever argument" because doing otherwise would allow petitioners to "shoehorn" the merits of their claims into Rule 60(b) motions. *Id.* Likewise, Busby's Rule 60(b) motion was a clear attempt to shoehorn the merits of his *Atkins* claim under the guise of an attack on the lower court's funding decision.

---

[3] Like Busby, the petitioner in *In re Segundo* sought funding to support a showing that he was intellectually disabled. *See Segundo v. Davis*, No. 4:10-CV-970-Y, 2018 WL 4623106, at *2 (N.D. Tex. Sept. 26, 2018).

23

Similarly, in *Gamboa*, this Court denied the petitioner a COA with respect to the district court's dismissal of his Rule 60(b) motion as a successive petition. 782 F. App'x at 300–01. The petitioner argued his Rule 60(b) motion was not a successive petition because it alleged federal habeas counsel's abandonment of him was a defect in the integrity of the habeas proceedings. *Id.* The district court explained that, if the petitioner's Rule 60(b) motion was successful, "the only result would be to give him an opportunity to present new claims through new counsel." *Id.* at 300. This Court acknowledged its holding in *Crutsinger* but found it undebatable that the petitioner's Rule 60(b) motion was a successive petition. *Id.* at 300–01.

Under *Crutsinger*, a Rule 60(b) motion is not a successive petition if it attacks *only* a court's earlier denial of funding. 929 F.3d at 265. But under *Gonzalez* and this Court's other precedent, a Rule 60(b) motion is a successive petition if it—like Busby's—seeks to revisit the merits of a petitioner's claims or if that would be the necessary consequence of granting the motion. *See Will*, 978 F.3d at 937 ("So, we must ask, was Will's Rule 60(b) motion actually an impermissible successive habeas petition in disguise? The answer: yes, *if* his Rule 60(b) motion contains

24

one or more previously presented habeas claims."); *id.* at 940 ("In sum, Will's Rule 60(b) motion—facially challenging a procedural ruling and implicitly challenging a merits determination—presents a habeas claim."); *Gonzales v. Davis*, 788 F. App'x 250, 252–53 (5th Cir. 2019) ("[T]his court has held that a Rule 60(b)(6) motion seeking reconsideration based on *Ayestas*'s change to the standard for funding requests, *so long as it does not also revisit the merits of other claims*, goes to a defect in the proceedings rather than the merits and therefore 'is not a successive habeas petition.'" (emphasis added, quoting *Crutsinger*, 929 F.3d at 264)); *In re Segundo*, 757 F. App'x at 335–36; *Gamboa*, 782 F. App'x at 300–01.

Despite Busby's assurance that the only purpose of his Rule 60(b) motion was to address this Court's denial of his request for funding, ROA.3459-61, his motion "also revisit[ed] the merits of other claims," *Gonzales*, 788 F. App'x at 252. Again, Busby has already obtained his sought-after funding and evidence, ROA.3457, so the purpose of his motion could not only have been to revisit the lower court's funding decision. Like the petitioner's motion in *In re Segundo*, the focus of Busby's motion was his *Atkins* claim, "and reopening the proceedings to

25

relitigate it [was] the clear objective of the filing[.]" 757 F. App'x at 336. And unlike the petitioner in *Crutsinger*, Busby's Rule 60(b) motion strayed far beyond merely challenging the denial of funding. *Compare* ROA.3466-81 (discussing at length the purported merits of Busby's *Atkins* claim), *with* Opposed Mot. for Relief from J. Pursuant to Fed. R. Civ. P. 60(b)(6) 19–27, *Crutsinger v. Davis*, No. 4:07-CV-703-Y (N.D. Tex. May 9, 2018) (challenging the district court's denial of funding and addressing factors relevant under Rule 60(b)(6)). Therefore, the district court properly concluded Busby's Rule 60(b) motion was a successive habeas petition because it sought to revisit the merits of his *Atkins* claim.[4] ROA.3606.

Busby's only retort is a spurious attempt to extend a defunct doctrine regarding exhaustion to the statutory provisions governing the filing of successive habeas petitions. Appl. 15–16. He argues that his Rule

---

[4]     After determining that Busby's Rule 60(b) motion was a successive habeas petition, this Court ordinarily would consider whether Busby is entitled to authorization under § 2244(b) to file a successive petition. *See Runnels v. Davis*, 746 F. App'x 308, 317 (5th Cir. 2018). But Busby failed to request authorization. In any event, Busby would not be entitled to authorization because he seeks to raise his *Atkins* claim a second time despite the fact that it was raised and denied on the merits in his initial federal habeas proceedings. Denial of authorization in such a circumstance would be mandatory. 28 U.S.C. § 2244(b)(1).

60(b) motion did not raise the same *Atkins* claim as his initial federal habeas petition because the claim in the Rule 60(b) motion was supported by a report opining that Busby is intellectually disabled. Appl. 15. To begin, this is tantamount to a concession that the Rule 60(b) motion *did* amount to a successive habeas petition by presenting a claim for relief. *See* Appl. 16 (Busby's acknowledgement that the district court's denial of his funding request did not preclude a ruling on the merits of his *Atkins* claim). In light of that concession, Busby cannot show the district court's conclusion that his Rule 60(b) motion was a successive petition is debatable.

Moreover, Busby's argument that the addition of an expert report fundamentally alters his *Atkins* claim, Appl. 16, is simply beside the point. Section 2244 does not ask whether a petitioner's claim was exhausted or whether a claim has been fundamentally altered by the addition of new evidence. *See In re Young*, 789 F.3d 518, 526 n.2 (5th Cir. 2015) (rejecting argument that a claim raised in a successive petition was fundamentally altered because that doctrine "concern[ed] the issue of exhaustion, not whether a petition is successive"). Instead, the statute *requires* that "[a] claim presented in a second or successive habeas corpus

27

application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1); *see In re Young*, 789 F.3d at 526 ("This new gloss on a previous claim is insufficient to overcome § 2244(b)(1)."); *Franklin v. Johnson*, 839 F.3d 465, 475 (6th Cir. 2016) ("At the very least, then, if we are to avoid rendering 28 U.S.C. § 2244(b)(1) entirely nugatory, Franklin may not use Rule 60(b) as a vehicle for relitigating the same 'claim' that was already decided against him in a previous habeas petition."). As the Eleventh Circuit has explained,

> Permitting a second or successive petition to be filed whenever expert witnesses decide to change their earlier opinions would not "greatly restrict [ ] the power of federal courts" to entertain second or successive petitions, but instead would have exactly the opposite effect—permitting second or successive petitions where pre-AEDPA law would not have. That is why in § 2244(b)(1), "claim" means claim, not evidence or arguments supporting a claim. And that is why the Supreme Court has instructed us that "[i]f the prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases." "In all cases" means all cases.

*In re Hill*, 715 F.3d 284, 295 (11th Cir. 2013) (citations omitted).

Busby provides no support for his attempt to import the defunct fundamental-alteration doctrine into the successiveness statute. And more to the point, the presentation of additional evidence through a Rule

28

60(b) motion to support a previously rejected claim "is the precise course of action *Gonzalez* forbids." *Runnels*, 746 F. App'x at 316. Busby's attempt at a "second chance to have the merits determined favorably" is squarely foreclosed by *Gonzalez* and renders his Rule 60(b) motion an impermissible successive petition. *See In re Coleman*, 768 F.3d 367, 371 (5th Cir. 2014) (quoting *Gonzalez*, 545 U.S. at 532 n.5).

For the proposition that his *Atkins* claim has been fundamentally altered such that it is a different claim than the one he previously raised, Busby relies entirely on this Court's opinion in *Ibarra v. Thaler*, 691 F.3d 677 (5th Cir. 2012), *overruled on other grounds by Trevino v. Thaler*, 569 U.S. 413 (2013). Appl. 15. But in *Ibarra*, this Court held that the petitioner's new evidence—an expert report and affidavits—that was not presented to the state court was properly excluded by the district court. *Ibarra*, 691 F.3d at 682. Indeed, after *Cullen v. Pinholster*, 563 U.S. 170 (2011), the factual-exhaustion rubric Busby relies upon serves no purpose with respect to a claim the state court adjudicated on the merits. *See Nelson v. Lumpkin*, 72 F.4th 649, 658 (5th Cir. 2023); *Lewis v. Thaler*, 701 F.3d 783, 790–91 (5th Cir. 2012). Nonetheless, this Court's pre-*Pinholster* precedent held that a petitioner's *Atkins* claim was not

rendered unexhausted where he presented no IQ data in state court but presented a full-scale score in federal court. *Morris v. Dretke*, 413 F.3d 484, 494–95 (5th Cir. 2005); *see also Lewis v. Quarterman*, 541 F.3d 280, 285 (5th Cir. 2008). Consequently, the doctrine Busby relies on is not only inapposite in the successiveness inquiry but also would not avail him even in a procedural default inquiry. The "gravamen" of Busby's *Atkins* claim is the same as it has always been. *Franklin*, 839 F.3d at 474–75. This Court should deny a COA.

Relatedly, Busby suggests the district court may have lacked jurisdiction to both transfer his Rule 60(b) motion as a successive petition and determine the merits of the motion. Appl. 5 n.2. Busby is incorrect. *See In re Edwards*, No. 17-70003 (5th Cir. Jan. 26, 2017), ECF No. 31-1 ("In the district court and before this court, Edwards consistently maintained that his Rule 60(b) motion was not barred as a second or successive petition. . . . [W]here a party is requesting a stay of an impending execution, it is particularly appropriate that the court address all arguments presented by the parties."); *see also Gonzales*, 788 F. App'x at 253 ("Because the district court's determination that the motion was a successive petition was incorrect, it had jurisdiction to engage in what it

30

called the 'alternative analysis'—whether Gonzales was entitled to relief under Rule 60(b)(6)."); *Ruiz v. Lumpkin*, 653 F. Supp. 3d 331, 340 (N.D. Tex. Jan. 27, 2023) ("To avoid the necessity of a remand in the unlikely event the Fifth Circuit reverses this court's conclusions regarding the nature of Ruiz's claims, and given the close proximity of Ruiz's execution, this court will explain why Ruiz is not entitled to relief under Rule 60(b)(6) even if this court were to examine the merits of his new claims."). Busby provides no basis on which this Court should conclude the district court lacked authority to address the merits of his Rule 60(b) motion in the alternative, much less that a remand is appropriate where the district court has already addressed the merits of the motion and found them lacking for several reasons.

For the reasons discussed above, this Court should deny a COA with respect to the district court's conclusion that Busby's Rule 60(b) motion was a successive habeas petition. To the extent Busby appeals the district court's transfer order, this Court should affirm. *See In re Pruett*, 784 F.3d at 291.

31

## II. The District Court Properly Concluded that Busby's Rule 60(b)(6) Motion Was Untimely.

A motion under Rule 60(b)(6), like Busby's, must be filed within a reasonable time "'unless good cause can be shown for the delay.' Reasonableness turns on the 'particular facts and circumstances of the case.'" *Clark v. Davis*, 850 F.3d 770, 780 (5th Cir. 2017) (footnotes omitted). Timeliness is "measured as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion[.]" *Id.* (footnote omitted). Busby's Rule 60(b) motion—challenging this Court's denial of funding *fifteen years ago* and premised entirely on an *eight-year-old* Supreme Court decision, ROA.3450-51—is untimely under controlling circuit precedent.

As noted above, the timeliness of a Rule 60(b) motion is measured by "the point in time when the moving party has grounds to make" his motion. *Clark*, 850 F.3d at 780. Busby indisputably had grounds to bring his motion when the Supreme Court issued its opinion in *Ayestas* in 2018. *Ayestas* is the *sole* ground on which he challenged the lower court's 2011 order denying his request for funding (although he has still not articulated how the court's denial was erroneous under *Ayestas*). ROA.3450-51. Busby's failure to attempt to rectify what he perceived was

32

error for eight years renders his motion indisputably untimely.[5] This is particularly true considering that Busby's federal habeas proceedings were ongoing when *Ayestas* was announced yet he took no action on it. *See Runnels*, 746 F. App'x at 312 (addressing Rule 60(b) motion and explaining that the petitioner's substitute counsel moved for a stay of proceedings in this Court to file a Rule 60(b) motion in district court).

Indeed, Busby did not even appeal the district court's denial of his request for funding during his initial habeas proceedings.[6] Busby says he was not required to abandon a "meritorious" request for rehearing to immediately benefit from *Ayestas*, Appl. 17, but the request wasn't meritorious. This Court described the request as "erroneous," "unavailing," and based on a "misread[ing]" of the panel's opinion. *Busby*,

---

[5]    *See Clark*, 850 F.3d at 781–82 (Rule 60(b) motion filed either twelve or sixteen months after the operative date was untimely); *Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (per curiam) (holding that district court did not abuse its discretion in denying Rule 60(b) motion filed eight months after the relevant change in law); *Pruett v. Stephens*, 608 F. App'x 182, 185–86 (5th Cir. 2015) (petitioner waited nineteen months after relevant change in law to file a Rule 60(b)(6) motion); *Paredes v. Stephens*, 587 F. App'x 805, 825 (5th Cir. 2014) (petitioner waited thirteen months after relevant change in law to file a Rule 60(b)(6) motion); *Trottie v. Stephens*, 581 F. App'x 436, 438 (5th Cir. 2014) (three years).

[6]    Busby asserts this Court "wrongfully affirmed" the lower court's denial of his request for funding. Appl. 12 n.4. However, Busby does not point to where this Court did so or where he appealed the denial of funding.

925 F.3d at 711, 714–15. In any event, Busby's attempt to use Rule 60(b) as a substitute for an appeal is flatly contrary to this Court's precedent, *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002), and does not render his motion timely.

Even if the time Busby's federal habeas proceedings were pending was not counted against him, his Rule 60(b) motion would have been untimely. Following the Supreme Court's denial of Busby's petition for a writ of certiorari in January 2020, *Busby v. Davis*, 589 U.S. 1141, he did not return to the district court to seek relief from judgment, and he did not file a subsequent state habeas application until a year later, ROA.4960. *See Pruett*, 608 F. App'x at 186 ("Yet Pruett waited fourteen months to present his [ ] claim in state court, and nineteen months to file his Rule 60(b)(6) motion in federal court."). Busby then failed to seek relief from judgment for another five months following the Supreme Court's denial of review in November 2025. No matter how Busby's delay is counted, it is unreasonable. *See* cases cited *supra* note 5. The lower court properly concluded Busby's Rule 60(b) motion was untimely, ROA.3606-07, and this Court should deny a COA.

34

### III. The District Court Properly Determined that Busby Was Not Entitled to Relief Under Rule 60(b)(6).

A final judgment may be lifted under Rule 60(b)(6) for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). However, the moving party must show "extraordinary circumstances," which the Supreme Court has "explained . . . 'will rarely occur in the habeas context.'" *Buck*, 580 U.S. at 112–13 (citation omitted). A Rule 60(b)(6) motion is not a substitute for a timely appeal. *Hess*, 281 F.3d at 216. The lower court properly concluded Busby failed to prove entitlement to post-judgment relief.

### A. Changes in decisional law do not constitute extraordinary circumstances.

Busby's request for relief from judgment was based entirely on the notion that the lower court's 2011 order denying his request for funding was rendered incorrect by *Ayestas*. ROA.3450-51. This was patently insufficient under Rule 60(b)(6) and is "effectively dispositive of the matter." *Crutsinger v. Davis*, 936 F.3d 265, 270 (5th Cir. 2019). *Ayestas* is undoubtedly not extraordinary in this case considering Busby's failure to appeal the funding denial in the first instance and his subsequent failure to file his Rule 60(b) motion in a reasonable time. *See Gonzalez*,

545 U.S. at 537 ("The change in the law . . . is all the less extraordinary in petitioner's case, because of his lack of diligence in pursuing review of the statute-of-limitations issue."). Binding precedent compels the conclusion that Busby's reliance on a change in decisional law does not warrant relief from judgment. *Crutsinger*, 936 F.3d at 270. The lower court's reliance on this Court's binding precedent was undebatably appropriate. ROA.3607.

**B.    Busby failed to identify any extraordinary circumstance.**

Even if the Supreme Court's decision in *Ayestas* could amount to an extraordinary circumstance, it does not do so in this case for a number of reasons. At the outset, it must be noted that while Busby asserts *Ayestas* renders this Court's 2011 order wrong, he fails to explain how. The Supreme Court explained in *Ayestas* that this Court's former requirement of a showing of "substantial need" for funding was "not a permissible reading of" 18 U.S.C. § 3599. *Ayestas*, 584 U.S. at 48. But the lower court's 2011 order did not reject Busby's funding request for failure to make a showing of a substantial need—the words do not even appear in the court's order. ROA.1869-77.

36

Busby has argued the lower court improperly denied funding for an intellectual-disability expert because he failed to show he had significantly subaverage intellectual functioning and his claim was not procedurally viable. Appl. 8. But the lower court denied funding—under a "reasonable necessity" analysis—"assuming [Busby's] claims [were] procedurally viable[.]" ROA.1871-77. The court ultimately denied funding because Busby failed "to explain how the experts retained in this case to date have been insufficient to develop evidence of his adaptive functioning." ROA.1875. Busby provides no reason to conclude *Ayestas* has any bearing on the lower court's decision in that respect. *See Ayestas*, 584 U.S. at 47 ("[T]he 'reasonably necessary' test requires an assessment of the likely utility of the services requested, and § 3599(f) cannot be read to guarantee that an applicant will have enough money to turn over every stone.").

Moreover, as discussed above, Busby has obtained the sought-after funding and expert report. "Extraordinary circumstances are particularly absent in this case because [Busby] has already received all the relief he has requested under [*Ayestas*]." *Ramirez v. Davis*, No. 2:12-

37

CV-410, 2019 WL 13438456, at \*6 (S.D. Tex. Jan. 3, 2019), *COA denied,* 780 F. App'x 110 (5th Cir. 2019).

Just as importantly, any new evidence Busby would have developed and presented for the first time in federal court would have been barred under 28 U.S.C. § 2254(d). *See Pinholster*, 563 U.S. at 182. As this Court has explained, the state court adjudicated the merits of Busby's *Atkins* claim, and the reasonableness of the state court's decision is judged by the law and record that existed at the time of that decision. *Busby v. Davis*, 925 F.3d at 714–16, 720. Newly developed evidence would have been irrelevant to that determination. *See Mamou v. Davis*, 742 F. App'x 820, 825 n.3 (5th Cir. 2018) (agreeing that funding was not reasonably necessary to develop claims that were denied in state court because review was limited to the existing record). Necessarily, then, the requested funds could not have generated useful and admissible evidence. *See Ayestas*, 584 U.S. at 46. Therefore, there was no reasonable necessity for the funds Busby requested, and there was nothing extraordinary about the lower court's denial of the request for funding to support an already-developed *Atkins* claim.

Busby poses two circumstances he says render his case extraordinary.[7] The first is that his claim alleges ineligibility of the death penalty, which Busby posits is more important than a claim alleging ineffective assistance of counsel like was at issue in *Crutsinger*. Appl. 19. The second is that the prosecuting office urged the state court to grant him relief after its expert did not controvert Dr. Martinez's opinion. Appl. 19. Neither circumstance is extraordinary.

First, the nature of Busby's claim does not automatically open the door to Rule 60(b) relief. Nor does the purported merit of his claim. Busby provides no guiding principle for valuing eligibility claims over others. Nonetheless, there is nothing extraordinary about *Atkins* claims generally or Busby's specifically. This is underscored by the fact that the state court denied the claim even with the benefit of the funds and expert opinion Busby sought in the lower court. *See Diaz v. Stephens*, 731 F.3d 370, 377–78 (5th Cir. 2013) (rejecting the petitioner's argument that his case was extraordinary because he pleaded more compelling constitutional violations than other habeas petitioners).

---

[7]    Busby does not argue the equities of his case warrant relief from judgment under *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. 1981). Any such argument is, therefore, forfeited.

39

Second, the fact that the State's expert could not "controvert the conclusion and opinion of Dr. Martinez," ROA.3515, does not render his case extraordinary. Nor does the prosecuting office's agreement to recommend that the state court grant relief render his case extraordinary. Busby analogizes his case to *Buck* to amplify the impact of the prosecuting office's agreement. Appl. 19. He argues that in *Buck*, the Attorney General's Office agreed to relief in several similarly situated cases but ultimately declined to agree in *Buck*. Appl. 19. *Buck* is clearly distinguishable because it was based in large part on the introduction of race into the petitioner's trial as an aggravating factor, a circumstance plainly absent here. *Buck*, 580 U.S. at 123–24. Consequently, *Buck* has little, if any, relevance. *See In re Segundo*, 757 F. App'x at 335–36; *Raby v. Davis*, 907 F.3d 880, 884–85 (5th Cir. 2018) (finding *Buck* "inapplicable" to Rule 60(b) analysis where the petitioner did not allege racial discrimination).

Nonetheless, there are obvious intervening circumstances in this case: the trial court's rejection of the parties' proposed findings of fact and conclusions of law, the trial court's own extensive findings and conclusions, the TCCA's adoption of the trial court's recommendation

that Busby's *Atkins* claim be denied, and the Supreme Court's denial of Busby's petition for review. *See* ROA.5432-34. Unlike in *Buck* where the Attorney General's Office's agreement to grant relief in several cases "provide[d] every reason for originally including" the petitioner as a similarly situated defendant but "no reason for later taking him off," *Buck*, 580 U.S. at 126, the highest state court's denial of Busby's *Atkins* claim—a decision that was upheld by the Supreme Court—entirely justifies the prosecuting office's decision to seek to carry out Busby's sentence.

Indeed, even a confession of error by the State does not bind the state's highest court to agree. *Estrada v. State*, 313 S.W.3d 274, 286 (Tex. Crim. App. 2010) ("While the State's confession of error in a criminal case is important and carries great weight, we are not bound by it."). As the Supreme Court has explained,

> For [the Court] to accept [the District Attorney's] view blindly in the circumstances, when a majority of the Court of Appeals of New York has expressed the contrary view, would be a disservice to the State of New York and an abdication of our obligation to lower courts to decide cases upon proper constitutional grounds in a manner which permits them to conform their future behavior to the demands of the Constitution.

41

*Sibron v. New York*, 392 U.S. 40, 58–59 (1968). This is particularly apt in this case where Busby's *Atkins* claim has been presented many times over and has been rejected by every court that has reviewed it on the merits. There was nothing extraordinary about the prosecuting office's decision in this case. Busby fails to proffer a reason the lower court could have or should have revisited the merits of his repeatedly rejected *Atkins* claim. This Court should deny a COA with respect to the lower court's conclusion that Busby failed to demonstrate any extraordinary circumstance. ROA.3607.

### C.    Busby's *Atkins* claim is meritless.

Busby argued at length in his Rule 60(b) motion that he is exempt from execution because he is intellectually disabled. ROA.3466-81. As every court that has reviewed his claim has concluded, however, he is wrong.[8]

---

[8]    Notably, the purported merits of Busby's claim are not relevant to the Rule 60(b) analysis because the lower court's 2011 order denying funding did not preclude a merits review of his claim, and there has been extensive consideration of the claim's merits. *See Haynes v. Davis*, 733 F. App'x 766, 769–70 (5th Cir. 2018). Nonetheless, the Director addresses them in the interest of thoroughness.

### 1. Busby does not have significantly subaverage intellectual functioning.

None of the IQ scores—74, 77, 79, and 81 (twice)—Busby has proffered over the years reaches below 70 even when accounting for the tests' range of error. ROA.3511 (Dr. McGarrahan's chart of Busby's IQ scores). Likely because of this, Busby's claim depends critically on application of the Flynn Effect. ROA.3469. But Busby's briefing is bereft of any precedent suggesting that such manipulation is required. Moreover, many courts have refused to require adjustment of IQ scores,[9] and the Supreme Court's precedent does not require it. *See Quince v.*

---

[9]    *E.g., White v. Lumpkin*, No. 24-70005, 2024 WL 4343615, at *3 (5th Cir. Sept. 29, 2024) ("[W]e are not required to adjust White's IQ scores downwards and do not choose to do so today."); *Commonwealth v. Flor*, 259 A.3d 891, 921 (Pa. 2021) ("The WAIS manual does not instruct such an adjustment [for the Flynn Effect], although it does advocate updating norms regularly. . . . [W]e agree that the record here supports the PCRA court's conclusion that consideration of the Flynn Effect may be pertinent to interpretation of a score in a particular case, but there is no generally accepted professional requirement or standard for adjusting a specific numerical score."); *Haliburton v. State*, 331 So. 3d 640, 647 (Fla. 2021); *Wright v. Sec'y, Dept. of Corr.*, No. 20-13966, 2021 WL 5293405, at *6 (11th Cir. Nov. 15, 2021); *Raulerson v. Warden*, 928 F.3d 987, 1008 (11th Cir. 2019) ("[T]here is no consensus about the Flynn [E]ffect among experts or among the courts."); *Smith v. Duckworth*, 824 F.3d 1233, 1246 (10th Cir. 2016) ("*Hall* says nothing about application of the Flynn Effect to IQ scores in evaluating a defendant's intellectual disability."); *Ex parte Cathey*, 451 S.W.3d 1, 14–19 (Tex. Crim. App. 2014) (finding a lack of evidence that clinical practitioners adjust IQ scores to account for the Flynn Effect); *Thorson v. State*, 76 So. 3d 667, 683 (Miss. 2011).

43

*State*, 241 So. 3d 58, 61 (Fla. 2018) ("As many courts have recognized, *Hall* [*v. Florida*, 572 U.S. 701 (2014),] does not mention the Flynn [E]ffect and does not require its application to all IQ scores in *Atkins* cases."). Indeed, the state court's decision in this case is plainly in keeping with the Supreme Court's observation that the Flynn Effect is "controversial." *Dunn v. Reeves*, 594 U.S. 731, 736 (2021).

Nonetheless, the state court appropriately explained that the Flynn Effect may affect test scores but that courts should not change an individual score.[10] ROA.4916 (citing *Cathey*, 451 S.W.3d at 5). The court also discussed the need to consider the SEM for an IQ test,[11] ROA.4916 (citing *Moore v. Texas*, 581 U.S. 1, 13 (2017)), ROA.4932-33, as well as the current diagnostic standards, ROA.4916. Indeed, the court considered Busby's FSIQ of 74 with an SEM of 70–79. ROA.4933-34.

---

[10]     The trial court also noted that neither Dr. Martinez nor Dr. McGarrahan quantified an appropriate adjustment of Busby's IQ scores to account for the practice effect. ROA.4932.

[11]     The trial court explained that the parties' experts failed to adequately explain the test-specific SEMs that apply to each of Busby's IQ scores. ROA.4932-33. Nonetheless, the court considered the SEMs that were supported "by at least some evidence or that were previously used by the federal habeas courts." ROA.4933.

Because the state court considered all the scores Busby proffered, as well as their SEMs, ROA.4932-33, he cannot show any error in the court's conclusion based on "a holistic review," ROA.4947, that he failed to satisfy the intellectual-functioning prong of the diagnostic criteria, much less that the state court's decision was unreasonable. This is particularly true considering that Busby was "able to present"—and the state court considered—"additional evidence of intellectual disability, including" evidence regarding adaptive deficits. *Hall*, 572 U.S. at 723; *see Moore*, 581 U.S. at 14.

### 2. Busby has not demonstrated he has significant deficits in adaptive behavior.

Busby also failed to identify any error in the state court's decision that he did not demonstrate significant deficits in adaptive behavior, let alone show that the court's rejection of his *Atkins* claim was unreasonable. First, the state court did not rely on evidence of Busby's adaptive strengths. Nowhere in its findings did the state court find evidence of Busby's adaptive deficits were rendered irrelevant or otherwise outweighed by his adaptive strengths. Indeed, the court explicitly stated it was not focusing on Busby's strengths. ROA.4942. Instead, the court resolved conflicts in the evidence of Busby's asserted

deficits. ROA.4942. This was appropriate in this case because there was conflicting evidence and therefore "the issue came down to resolving those conflicts and inconsistencies based on credibility and weight determinations." *Petetan v. State*, 622 S.W.3d 321, 349 (Tex. Crim. App. 2021); *see Ex parte Cathey*, 451 S.W.3d at 19 ("Both experts and those answering questions about a person's adaptive functioning may exhibit significant conscious or unconscious bias in addressing [the adaptive behavior] issue.").

For instance, the state court explained that Dr. Proctor administered the WRAT to Busby in 2005, which showed he had a fourth grade reading level and sixth-grade skills in math. ROA.4937. Busby scored similarly on the WRAT Dr. Martinez administered in 2022. ROA.4937. Busby also admitted having pen pals with whom he corresponded. ROA.4938. Yet several of the individuals who provided information regarding Busby's purported adaptive deficits stated Busby could not count money or order fast food and that he could not read or write—plainly inconsistent with Busby's achievement scores.[12]

---

[12]     At trial, Busby's sisters Kimiko Coleman and Tarsharn Busby testified they had not seen Busby in seven and six years, respectively. 35 Reporter's Record (RR) 61, 77–78.

46

ROA.4938 ("Several also noted that [Busby] was not good with numbers, even unable to count money or order fast food, which contradicts his WRAT score showing he performed at a sixth-grade math level."), 4941-42. The court's assessment of the credibility of the evidence was especially appropriate given the sources and context of the evidence, i.e., individuals who would be highly motivated to exaggerate their recollection of Busby's adaptive behavior from many years earlier. *See Ex parte Cathey*, 451 S.W.3d at 21 (noting "issues of potential bias in giving the Vineland test to applicant's family members who had a motive to underestimate his abilities and activities"). Busby fails to identify any error in the state court performing its essential function as a factfinder.

Similarly, Dr. McGarrahan found that Dr. Martinez's scores were "highly consistent" with the testing administered by Dr. Proctor. ROA.3513. And although Busby had a learning disability, 35 RR 18, 25–27, Dr. Proctor testified there was no evidence Busby was intellectually disabled, 36 RR 64. Busby's school records showed he was placed in "LLD" classes for the learning disabled where he achieved average grades in junior high school and his freshman year of high school. ROA.4936; 35

RR 17–18, 25. Notably though, Busby's school records also indicated a significant number of days when he was absent. 35 RR 16; *see* ROA.3502.

Busby fails to identify any error in the state court's conclusion that the credible evidence did not support a finding that Busby suffers significant limitations in adaptive behavior. He cannot show the state court erred in crediting Dr. Proctor's opinion that Busby's achievement scores and school records did not demonstrate intellectual disability. 36 RR 50–52, 64.

Second, Busby fails to show the state court erred in discounting the results of the ABAS-III administered by Dr. Martinez. The court's skepticism of retrospective assessments by motivated informants of an individual's adaptive behavior decades earlier was well supported. *See Petetan*, 622 S.W.3d at 356 (concluding that a jury could reasonably reject ABAS-II results because it was not normed for retrospective assessments and the informants were relatives of the appellant); *Ex parte Cathey*, 451 S.W.3d at 19–21, 21 n.64 (collecting cases). Busby therefore cannot show any error in the state court's assessment of the "conflicting" evidence regarding his adaptive behavior or that the state court's decision was unreasonable. ROA.4943.

48

## IV.  Busby Is Not Entitled to a Stay of Execution.

The Court should also deny Busby's request for a stay of execution. Appl. 24. A stay of execution "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough,* 547 U.S. 573, 584 (2006) (citing *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004)). Rather, the inmate must satisfy all the requirements for a stay, including a showing of a significant possibility of success on the merits. *Id.* (citing *Barefoot v. Estelle*, 463 U.S. 880, 895–96 (1983)). When the requested relief is a stay of execution, a court must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). A court must consider "the State's strong interest in proceeding with its judgment" and "attempt[s] at manipulation." *Nelson*, 541 U.S. at 649–50 (citing *Gomez v. U.S. Dist. Court for Northern Dist of California,* 503 U.S. 653, 654 (1992)).

49

Busby's *Atkins* claim has been raised and rejected before. His attempt to re-raise the claim at the last minute after failing to pursue his claim—and his complaint regarding the denial of funding—with alacrity forecloses his appeal to equity. *See Bucklew v. Precythe*, 587 U.S. 119, 149–51 (2019). That delay, alone, requires a "strong equitable presumption" against a stay of execution. *Hill*, 547 U.S. at 584. Further, as demonstrated above, Busby is not entitled to a stay considering the district court's indisputably correct conclusions that the Rule 60(b) motion was a successive habeas petition, untimely, and meritless.

Moreover, "[b]oth the State and the victims of crimes have an important interest in the timely enforcement of a sentence." *Hill*, 547 U.S. at 584. The public has a strong interest in enforcement of Busby's sentence. His last-minute attempt to reraise a meritless claim is plainly a dilatory effort to delay his sentence. Such tactics underscore why the Court should deny his application for a stay. *See, e.g.*, *Bucklew*, 587 U.S. at 149–51. Busby presents no reason to delay his execution date any longer.

Lastly, Busby cannot overcome the strong presumption against granting a stay or demonstrate that the balance of equities entitles him

50

to a stay of execution. For the same reason, Busby fails to show that he would suffer irreparable harm if denied a stay of execution. *See Walker v. Epps*, 287 F. App'x 371, 375 (5th Cir. 2008) (explaining that "the merits of [the movant's] case are essential to [the court's] determination of whether he will suffer irreparable harm if a stay does not issue"). This Court should deny Busby's request for a stay of execution.

## CONCLUSION

The Director requests that Busby's application for a COA be denied and that his request for a stay of execution be denied.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division

s/ Jefferson Clendenin
JEFFERSON CLENDENIN
Assistant Attorney General
Texas Bar No. 24059589
*Counsel of Record*

51

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 936-1600
Fax: (512) 320-8132
Email: jay.clendenin@oag.texas.gov

*Attorneys for Respondent–Appellee*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I do hereby certify that this brief complies with Fed. R. App. Proc. 32(a)(7)(C) in that it contains 11,382 words, Microsoft Word 2010, Century Schoolbook, 14 points.

s/ Jefferson Clendenin
JEFFERSON CLENDENIN
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARDS

I do hereby certify that: (1) all required privacy redactions have been made pursuant to Fifth Circuit Rule 25.2.13; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus-scanning program and is free of viruses.

s/ Jefferson Clendenin
JEFFERSON CLENDENIN
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic case-filing (ECF) system of the Court. The ECF system sent a "Notice of Electronic Filing" (NEF) to Busby's counsel of record, who consented in writing to accept the NEF as service of this document by electronic means: David R. Dow and Jeffrey R. Newberry.

s/ Jefferson Clendenin
JEFFERSON CLENDENIN
Assistant Attorney General