# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 8, 2026

Lyle W. Cayce
Clerk

No. 26-70004

---

EDWARD LEE BUSBY,

*Petitioner—Appellant,*

*versus*

ERIC GUERRERO, *Director, Texas Department of Criminal Justice, Correctional Institutions Division,*

*Respondent—Appellee.*

CONSOLIDATED WITH

---

No. 26-10354

---

IN RE EDWARD LEE BUSBY,

*Movant.*

---

Application for Certificate of Appealability
from the United States District Court for the Northern District of Texas
USDC No. 4:09-CV-160

---

Before RICHMAN, GRAVES, and HIGGINSON, *Circuit Judges.*

PER CURIAM:

Edward Lee Busby has filed a motion to stay his execution, which is scheduled to occur on May 14, 2026. JUDGE GRAVES would grant habeas relief and therefore grant a stay of execution. JUDGE HIGGINSON would grant a temporary stay of execution until the United States Supreme Court issues a decision in *Hamm v. Smith*, No. 24-872, 145 S. Ct. 2776 (2025). JUDGE RICHMAN would deny a stay of execution and would deny habeas relief. Accordingly,

IT IS ORDERED that the execution scheduled for May 14, 2026, is temporarily STAYED pending further order of this court.

Stephen A. Higginson, *Circuit Judge*:

I join the grant of a temporary stay of execution of Petitioner Edward Lee Busby's sentence of death pending the Supreme Court's forthcoming decision in *Hamm v. Smith*, No. 24-872, 145 S. Ct. 2776 (2025).

In *Hamm*, the Supreme Court granted certiorari as to this question: Whether and how courts may consider the cumulative effect of multiple intelligent quotient (IQ) scores in assessing a claim under *Atkins v. Virginia*, 536 U.S. 304 (2002). The United States, as well as many amici states, including Texas, further urge the Court to revisit its larger Eighth Amendment framework governing how courts must evaluate individuals who may be intellectually disabled. Broadly, therefore, *Hamm* is likely to confirm the constitutional rule we must apply in capital cases like this one to determinations of intellectual disability. Even narrowly, *Hamm* is likely to instruct how we must evaluate multiple IQ scores above 70 in conjunction with different assessments, by different experts, of a capital defendant's deficits in adaptive behavior. Busby's circumstance closely parallels the Petitioner's in *Hamm*, and perhaps even more starkly underscores the need for clarity regarding lower court review of such evidence, considering that both the state and Busby agreed in the state habeas court that he qualified as intellectually disabled. Argument in *Hamm* was heard last year and the decision is expected any day or, at most, in weeks, as we near the end of the Court's term.

For this reason, I join the temporary stay of Busby's execution. [1] In a matter of life and death, we must be certain that we apply the proper

---

[1] Because *Hamm* is pending, I do not reach the disagreement between my colleagues. However, I am mindful of AEDPA deference, as applied by Judge Richman to the state habeas court's factual determination that Busby is not intellectually disabled.

constitutional rule as to whether and how to determine intellectual disability before states may execute defendants for capital crimes, especially when it is a rule that the Supreme Court imminently will clarify. *See, e.g.*, *Mobley v. Head,* 306 F.3d 1096, 1097 (11th Cir. 2002); *Reid v. Johnson,* No. 03-7916 (4th Cir. Dec. 17, 2003) (order granting preliminary injunction), *aff'd mem.*, *Johnson v. Reid,* 540 U.S. 1097 (2003); *cf. United States v. Perdomo*, 914 F.3d 356, 357 (5th Cir. 2019); *Navarrete v. Bondi*, 170 F.4th 1214, 1219 (9th Cir. 2026).

Priscilla Richman, *Circuit Judge*, concurring in part and dissenting in part:

Edward Lee Busby is scheduled to be executed by the State of Texas on May 14, 2026. His previous habeas petition in federal court included an *Atkins*[2] claim; our court denied relief in 2019.[3] Busby subsequently returned to state court to once again press the claim that he is intellectually disabled and therefore ineligible for the death penalty. In 2021, the Texas Court of Criminal Appeals (TCCA) remanded Busby's *Atkins* claim to the state trial court "for a review of the claim's merits."[4] Busby's expert administered another IQ test, the WAIS-IV, in 2022, on which Busby scored 81, with a range of 77-85, when the Standard Error Measurement (SEM) is considered.[5] Based on this and previous IQ test scores, evidence of Busby's adaptive skills, expert reports, and testimony, the state trial court concluded Busby did not show, by a preponderance of the evidence, that he is intellectually disabled.[6] The TCCA adopted those findings and conclusions and denied habeas relief on the *Atkins* claim.[7]

In 2025, Busby filed a Rule 60(b) motion for reconsideration of the federal district court's denial of his habeas claim in 2015.[8] The district court

---

[2] *Atkins v. Virginia*, 536 U.S. 304 (2002).

[3] *See Busby v. Davis*, 925 F.3d 699, 702 (5th Cir. 2019).

[4] *Ex parte Busby*, No. WR-70,747-06, 2021 WL 369737, at *1 (Tex. Crim. App. Feb. 3, 2021).

[5] ROA.3511.

[6] *Texas v. Busby*, No. W011911, at 40 (2d Crim. Dist. Ct., Tarrant County, Tex. Oct. 12, 2023); ROA.4945.

[7] *See Ex parte Busby*, No. WR-70,747-06, 2025 WL 702111, at *1 (Tex. Crim. App. Mar. 5, 2025).

[8] *Busby v. Guerro*, ___ F. Supp. 3d. ___, 2026 WL 1018340, at *1 (N.D. Tex. 2026).

held the motion was a successive habeas petition, transferred it to this court, and alternatively denied the Rule 60(b) motion.

Busby seeks a stay of execution and a certificate of appealability (COA) from this court to challenge the district court's judgment. Busby also seeks authorization to file a successive habeas petition. We consolidated these cases and have expedited consideration of the merits.

I concur in the grant of a certificate of appealability, and I agree with JUDGE GRAVES's opinion to the extent it concludes we should proceed to consider the merits of the *Atkins* claim. However, I respectfully dissent from the order granting a stay of execution and from this court's failure to deny Busby's claim for habeas relief. I would deny Busby's motion for a stay of execution, affirm the district court's denial of the Rule 60(b) motion, and deny Busby's petition for habeas relief.

# I

Busby was convicted at trial and sentenced to death for the kidnapping, robbery, and murder of a seventy-eight-year-old woman.[9] The TCCA affirmed on direct review,[10] and the Supreme Court denied Busby's petition for certiorari.[11]

In Busby's first state habeas petition,[12] he asserted ineffective assistance of counsel (IAC) regarding trial counsel's mitigation investigation,

---

[9] *Busby v. State*, 253 S.W.3d 661, 663 (Tex. Crim. App. 2008), *cert. denied*, 555 U.S. 1050 (2008).

[10] *Id.*

[11] *Busby v. Texas*, 555 U.S. 1050 (2008).

[12] *See Ex parte Busby*, No. WR-70,747-01, 2009 WL 483096 (Tex. Crim. App. Feb. 25, 2009) (not designated for publication).

among other grounds for relief.[13] State habeas counsel was granted funding to perform an independent mitigation investigation.[14] Following the investigation, his state habeas counsel withdrew the IAC claim, and the TCCA dismissed the petition.[15]

Busby then filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254.[16] The petition asserted seven claims, including, as relevant here, that Busby's death sentence violates the Eighth Amendment under *Atkins v. Virginia*[17] because he is intellectually disabled.[18] The district court stayed Busby's petition to permit him to exhaust that and other claims that had not been previously presented in state court.[19]

Busby filed another state habeas petition.[20] In support of his *Atkins* claim, Busby presented several IQ tests, consisting of: (1) a full-scale IQ (FSIQ) of 77 on the Wechsler Adult Intelligence Scale—Third Edition (WAIS-III) administered by Busby's defense expert, Dr. Timothy Proctor, who testified at trial in 2005; (2) an estimated FSIQ of 81 on the Beta-III administered by Dr. Proctor in 2005; (3) an FSIQ of 79 on the WAIS-III

---

[13] *Busby v. Davis*, 925 F.3d at 703 (5th Cir. 2019); *Ex parte Busby*, 2009 WL 483096, at *1.

[14] *Busby v. Davis*, 925 F.3d at 703; *see also Busby v. Stephens*, No. 4:09-CV-160-O, 2015 WL 1037460, at *14 (N.D. Tex. Mar. 10, 2015); *Ex parte Busby*, 2009 WL 483096, at *1.

[15] *Busby v. Davis*, 925 F.3d at 703-04; *Ex parte Busby*, 2009 WL 483096, at *1.

[16] *Busby v. Davis*, 925 F.3d at 704.

[17] 536 U.S. 304 (2002).

[18] *Busby v. Davis*, 925 F.3d at 704.

[19] *Id*; *Busby v. Stephens*, 2015 WL 1037460, at *2.

[20] *See Ex parte Busby*, No. WR-70, 747-02, 2013 WL 831550, at *1 (Tex. Crim. App. Mar. 6, 2013) (per curiam) (not designated for publication).

administered by Dr. Sven Helge in 2005; and (4) an FSIQ of 74 on the Wechsler Adult Intelligence Scale—Fourth Edition (WAIS-IV) in 2010.[21] Busby argued his scores should be adjusted downward to account for the Flynn Effect.[22] Busby also presented evidence of limitations in adaptive behavior consisting of school records and retrospective information from friends and family.[23] Busby did not present any expert who reached the conclusion that he was intellectually disabled.[24]

Because the *Atkins* claim was raised in a second state habeas petition and could have been presented in the first proceeding, the TCCA treated it as a successive habeas petition.[25] The TCCA denied the claim as an abuse of the writ.[26]

Busby returned to federal court. The district court denied habeas relief in 2015, concluding that Busby's *Atkins* claim was procedurally defaulted.[27] The district court additionally denied Busby's requests for funding to obtain an expert report opining on whether he is intellectually

---

[21] *See Busby v. Davis*, 925 F.3d at 716-17; *Busby v. Stephens*, 2015 WL 1037460, at *10, *20.

[22] *See Busby v. Davis*, 925 F.3d at 716-17; *In re Cathey*, 857 F.3d 221, 227 (5th Cir. 2017) (noting the Flynn Effect posits that "standardized IQ test scores tend to increase with the age of the test without a corresponding increase in actual intelligence in the general population" (quoting *Wiley v. Epps*, 625 F.3d 199, 203 n.1 (5th Cir. 2010), *as revised* (Nov. 17, 2010))).

[23] *Busby v. Davis*, 925 F.3d at 719, 724.

[24] *See id.* at 718.

[25] *Id.* at 705; *Ex parte Busby*, 2013 WL 831550, at *1; *see also Ex parte Blue*, 230 S.W.3d 151, 156 (Tex. Crim. App. 2007); Tex. Code Crim. Proc. art. 11.071, § 5(a).

[26] *See Ex parte Busby*, 2013 WL 831550, at *1.

[27] *Busby v. Stephens*, No. 4:09-CV-160-O, 2015 WL 1037460, at *18-21, *28 (N.D. Tex. Mar. 10, 2015).

disabled,[28] adhering to our then-controlling rule that a petitioner must demonstrate that his claim is procedurally viable to be entitled to funds to develop a claim.[29]

We granted a COA permitting Busby to challenge the district court's finding of procedural default.[30] Although we held the TCCA's ruling was a merits decision such that his *Atkins* claim was not procedurally defaulted, we also held the TCCA's disposition of the claim withstood scrutiny under the Antiterrorism and Effective Death Penalty Act (AEDPA).[31] The Supreme Court denied certiorari.[32]

Busby filed another state habeas application and again raised his *Atkins* claim, contending that it relied on a previously unavailable factual or legal basis.[33] This was the first proceeding at which Busby produced an expert report opining that he is intellectually disabled.[34] The TCCA stayed Busby's execution and remanded his claim to the trial court for review on the

---

[28] ROA.1869-77.

[29] ROA.1869-71; *see Woodward v. Epps*, 580 F.3d 318, 334 (5th Cir. 2009) (noting that denial of funding for investigative or expert services "has been upheld 'when a petitioner has . . . failed to supplement his funding request with a viable constitutional claim that is not procedurally barred'" (quoting *Smith v. Dretke*, 422 F.3d 269, 288 (5th Cir. 2005))).

[30] *Busby v. Davis*, 677 F. App'x 884, 887-89, 893 (5th Cir. 2017) (unpublished).

[31] *Busby v. Davis*, 925 F.3d 699, 706-07, 710, 720 (5th Cir. 2019) (applying 28 U.S.C. § 2254).

[32] *Busby v. Davis*, 589 U.S. 1141 (2020).

[33] ROA.4960-5020; *Ex parte Busby*, No. WR-70,747-06, 2021 WL 369737, at *1 (Tex. Crim. App. Feb. 3, 2021); *see* Tex. Code Crim. Proc. art. 11.071, § 5(a)(1).

[34] *See Busby v. Davis*, 925 F.3d at 706 (2019 federal habeas opinion noting absence of expert report opining that Busby was intellectually disabled).

merits.[35]   In the state trial court, Busby presented the same evidence discussed above as well as an FSIQ of 81 on the WAIS-IV, which was administered by Dr. Gilbert Martinez in 2022.[36]  Dr. Martinez opined that Busby's adjusted IQ scores fell within the range of intellectual disability, and his deficits in adaptive functioning met the diagnostic criteria.[37]  The State's expert, Dr. Antoinette McGarrahan, reviewed the historical data and Dr. Martinez's 2022 report and stated she could not "controvert the conclusion and opinion of Dr. Martinez that Mr. Busby [met] the full diagnostic criteria for intellectual disability according to current standards."[38]

The state submitted proposed findings of fact and conclusions of law that would have modified Busby's death sentence into a life sentence.[39] However, the state trial court did not adopt them.  It  declined to adjust Busby's IQ scores to account for the Flynn Effect and concluded that Busby's adaptive-behavior evidence did not establish that he was intellectually disabled.[40]  The court concluded Busby failed to demonstrate significantly subaverage intellectual functioning or significantly subaverage deficits in adaptive functioning and recommended Busby's claim be denied.[41] The TCCA adopted the trial court's findings and conclusions in substantial

---

[35] ROA.5525-27; *Ex parte Busby*, 2021 WL 369737, at *1.

[36] ROA.3490, 4925.

[37] ROA.3509, 4926, 4937.

[38] ROA.3510-15, 4926-28.

[39] ROA.3533.

[40] ROA.4930, 4941-45.

[41] ROA.4935, 4943, 4948.

part and denied Busby's claim.[42] The Supreme Court again denied certiorari.[43]

Busby then filed a Rule 60(b) motion for reconsideration in the federal district court, arguing that the Supreme Court's 2018 decision in *Ayestas v. Davis*[44] overruled this circuit's rule that required the district court to deny his request for funding, and that the denial of funding to obtain an expert report constituted a defect in the integrity of his federal habeas proceeding.[45] The district court held the motion was a successive habeas petition, transferred it to our court, and alternatively denied the Rule 60(b) motion as untimely and not presenting extraordinary circumstances.[46]

Busby now seeks a COA to appeal the district court's holding that his Rule 60(b) motion was a successive habeas petition and its alternative denial of his Rule 60(b) motion. Busby has also moved for authorization from our court to file a successive habeas petition. I concur in granting a COA, and in light of the pending execution date, I agree that we should proceed to the merits of his appeal.[47]

---

[42] ROA.5432-34; *Ex parte Busby*, No. WR-70,747-06, 2025 WL 702111, at *1 (Tex. Crim. App. Mar. 5, 2025) (not designated for publication).

[43] *Busby v. Texas*, 146 S. Ct. 371 (2025).

[44] 584 U.S. 28 (2018).

[45] ROA.3441-3483.

[46] ROA.3601-3609.

[47] *See United States v. Gobert*, 139 F.3d 436, 439 (5th Cir. 1998); *Mata v. Johnson*, 99 F.3d 1261, 1265 (5th Cir. 1996), *vacated in part on reh'g by Mata v. Johnson*, 105 F.3d 209 (5th Cir. 1997).

## II

Busby presents three issues in support of his Rule 60(b) motion, and my conclusions are summarized beneath each of them:

(1) whether a motion that asks the district court to reopen a federal habeas proceeding to consider the *Atkins* claim that could have previously existed but for the district court's error in denying funding can proceed pursuant to Rule 60 of the Federal Rules of Civil Procedure;

Busby asserts in his briefing in our court that in the most recent state court proceedings, the state habeas trial court "granted Busby the funds necessary to obtain an opinion from an expert regarding whether Busby is intellectually disabled,"[48] and an expert has concluded that he is intellectually disabled. Since Busby has received funding and fully developed his *Atkins* claim in state court, I would hold there is no need to reopen his federal habeas proceeding on this ground.

(2) whether such a motion is timely if the Movant has diligently pursued relief on his *Atkins* claim since federal habeas counsel was appointed to represent him;

I submit that this issue is moot.

(3) whether a Rule 60 motion presents extraordinary circumstances when both Counsel for the State and Counsel

---

[48] Busby Brief at 11; *see also id.* at 3 ("Busby has obtained the funds necessary to have an expert opine on whether he is intellectually disabled; consequently, the record now contains precisely the report from Dr. Martinez that this Court previously found to be lacking."); *id.* at 19 ("we now know that the funds could have yielded (and have since yielded) precisely the item both the district court and this Court faulted Busby for not previously possessing: an opinion from an expert opining that he is intellectually disabled").

for Movant have asked the state habeas trial court to find that the Movant is ineligible for execution.

As discussed more fully below, in my view, Busby's Rule 60(b) motion seeks habeas relief. I therefore do not proceed under Rule 60(b), but instead apply AEDPA in considering Busby's *Atkins* claim.

In a footnote, Busby's brief asserts that his "principal challenge is to the district court's denial of funding," and that it is "not entirely certain that Busby requires a COA. Nevertheless, and out of an abundance of caution, and given the close proximity of the merits to the defect in the proceedings in the district court, Busby is hereby requesting from this Court a COA."[49] Just last night, on May 7, 2026, Busby submitted a brief arguing his petition for habeas is not successive or should not be treated as such. Though that submission was late, I consider it since a person's life is at issue. I agree that a certificate of appealability should be granted as to the district court's denial of habeas relief on the *Atkins* claim. In light of the nearness of the execution date, I proceed to the merits of that claim based on the briefing before us.

### III

I begin with the district court's determination that Busby's Rule 60(b) motion was a successive habeas petition. The Supreme Court has explained that "[i]n some instances, a Rule 60(b) motion will contain one or more 'claims.'"[50] For example, "a motion might seek leave to present 'newly discovered evidence,' in support of a claim previously denied."[51] "A motion can also be said to bring a 'claim' if it attacks the federal court's previous

---

[49] Busby's Brief at 12 n.4.

[50] *Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005).

[51] *Id.* at 531 (quoting FED. R. CIV. P. 60(b)(2)).

resolution of a claim *on the merits*, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief."[52] "A habeas petitioner's filing that seeks vindication of such a claim is, if not in substance a 'habeas corpus application,' at least similar enough that failing to subject it to the same requirements would be 'inconsistent with' the statute."[53] Conversely, "[w]hen no 'claim' is presented, there is no basis for contending that the Rule 60(b) motion should be treated like a habeas corpus application."[54]

Busby's Rule 60(b) motion is "if not in substance 'a habeas corpus application,' at least similar enough" that it "should be treated accordingly."[55] Busby's motion is analogous to one "seek[ing] leave to present 'newly discovered evidence,' in support of a claim previously denied,"[56] which the Court has explained is a paradigm example of a pleading that is in substance a habeas petition. Busby's motion argues that "[w]hen the Report obtained through the funds th[e district c]ourt previously (and incorrectly) withheld is considered, it is clear that Busby is ineligible for execution because of intellectual disability."[57] His motion reasserts his *Atkins* claim in light of new evidence—the expert reports obtained after his federal habeas proceedings. Indeed, Busby's motion for reconsideration in the federal district court comes after he "filed in the convicting court his

---

[52] *Id.* at 532 (footnote omitted).

[53] *Id.* at 531 (quoting 28 U.S.C. § 2254).

[54] *Id.* at 533.

[55] *Id.* at 531 (quoting 28 U.S.C. § 2254).

[56] *Id.* (quoting Fed. R. Civ. P. 60(b)(2))

[57] ROA.3442.

second subsequent habeas application," a reassertion of his *Atkins* claim on the basis of the newly obtained expert reports, and then litigated the claim on the merits in the TCCA.[58]

Busby argues his Rule 60(b) motion is not a habeas petition "because it addresses a defect in the integrity of the prior proceeding . . . . Specifically, the [m]otion addresses the district court's wrongful denial of the funds that were reasonably necessary to obtain a report from an expert opining that Busby is intellectually disabled."[59] Busby is correct that a Rule 60(b) motion is not a habeas petition when it "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings."[60] However, the denial of funding is only nominally at issue; as already noted, Busby has already obtained the expert reports he sought funding to obtain and has no further need for funds. Now that he has the reports, he seeks to re-assert his challenge to the denial of the *Atkins* claim.

A central issue is whether Busby's motion presents a *successive* habeas petition such that the district court was required to transfer it to our court and we would be required to apply the standards in 28 U.S.C. § 2244. Busby asserts that his *Atkins* claim, as now presented, is "new" because an expert has opined for the first time that Busby is intellectually disabled, and the expert witness for the Tarrant County district attorney's office agrees with that assessment. However, I would assume without deciding that Busby's motion is "new" and not a successive habeas petition, because even if the

---

[58] *Ex parte Busby*, No. WR-70,747-06, 2025 WL 702111, at *1 (Tex. Crim. App. Mar. 5, 2025) (not designated for publication).

[59] Busby Br. at 14.

[60] *Crosby*, 545 U.S. at 532.

15

stringent standards of 28 U.S.C. § 2244(b) are inapplicable,[61] Busby's *Atkins* claim fails on the merits under AEDPA, 28 U.S.C. § 2254(d)(2). I note that the TCCA concluded that Busby's most recent request for habeas relief in that court based on *Atkins* was not barred as successive under state law.[62]

---

[61] 28 U.S.C. § 2244(b) provides:

> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless-
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

[62] *See Ex parte Busby*, No. WR-70,747-06, 2021 WL 369737, at *1 (Tex. Crim. App. Feb. 3, 2021); TEX. CODE CRIM. PROC. art. 11.071, § 5(a)(1), which provides:

> (a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because

My review of the TCCA's denial of Busby's *Atkins* claim on the merits therefore proceeds on the assumption that AEDPA governs.[63] A federal court cannot grant habeas relief under 28 U.S.C. § 2254(d)

> unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[64]

The state trial court judge who presided over Busby's 2005 jury trial was the same judge who conducted the September 9, 2023 hearing on Busby's most recent *Atkins* submission in state court.[65] The state trial court's findings of fact and conclusions of law applied the definition of intellectual disability from *Atkins*, *Moore v. Texas*,[66] and *Petetan v. State*.[67]

---

the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application. . . .

[63] *See also Brumfield v. Cain*, 576 U.S. 305, 310-11 (2015) (applying AEDPA to an *Atkins* claim first raised in state habeas proceedings then pursued in federal habeas petition); *Busby v. Davis*, 925 F.3d 699, 710 (5th Cir. 2019).

[64] 28 U.S.C. § 2254(d).

[65] *See Texas v. Busby*, No. W011911, at 1 (2d Crim. Dist. Ct., Tarrant County, Tex. Oct. 12, 2023) (Findings of Fact and Conclusions of Law on Second Subsequent Postconviction Habeas Corpus Application and Order) (reflecting that the court considered "the Court's personal recollections and credibility determinations" in ruling on the most recent state habeas submission); ROA.4906; *Texas v. Busby*, No. W011911, at 43 ("Based on this Court's review of the law, the presented evidence, the parties' arguments, and this Court's own recollections and credibility determinations, this Court RECOMMENDS that relief be denied."); ROA.4948.

[66] 586 U.S. 133, 135 (2019).

[67] 622 S.W.3d 321, 338 (Tex. Crim. App. 2021) (explaining "we apply contemporary clinical standards—the framework set forth in the DSM–5," citing

The state habeas trial court recognized that "intellectual disability consists of three core elements: (1) intellectual-functioning deficits, (2) adaptive deficits, (3) and the onset of these deficits while still a minor."[68]  These standards are not contrary to or an unreasonable application of clearly established federal law.[69]  The state habeas trial court further held "Busby must establish all elements of intellectual disability by a preponderance of the evidence."[70]  I do not opine on whether that is the appropriate burden of proof or whether a more demanding standard is required.  Applying the less demanding burden of proof to Busby's claim (preponderance of the evidence as opposed to clear and convincing evidence), I assess whether the TCCA *unreasonably* determined that, in light of the facts adduced in the state court proceedings, Busby failed to establish that he is intellectually disabled.[71]

The Supreme Court explained the standard of review under 28 U.S.C. § 2254(d)(2) in *Brumfield*, a case involving an *Atkins* claim:

> We may not characterize these state-court factual determinations as unreasonable "merely because [we] would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Instead, § 2254(d)(2) requires that we accord the state trial court substantial deference.  If "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Ibid.* (quoting *Rice v. Collins*, 546

---

American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013)).

[68] *Texas v. Busby*, No. W011911, at 9; ROA.4914.

[69] *See Busby v. Davis*, 925 F.3d 699, 711-15 (5th Cir. 2019).

[70] *Texas v. Busby*, No. W011911, at 10; ROA.4915.

[71] *See* 28 U.S.C. § 2254(d)(2).

U.S. 333, 341–342 (2006)). As we have also observed, however, "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review," and "does not by definition preclude relief." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003).[72]

The state habeas trial court observed, "[e]xcept for Martinez's 2022 report and testing and McGarrahan's reviewing report, [Busby's evidence] appears to be substantially the same evidence considered by the federal courts."[73] As to one of the three factors that must considered in assessing intellectually disability, all agree that the onset of Busby's intellectual-functioning and adaptive deficits occurred when he was a minor. But there is disagreement among the experts as to the import of Busby's IQ scores and evidence of adaptive deficits.

There is considerable evidence regarding IQ tests administered to Busby. The first known IQ test was in 2001, and it resulted in a score of 96. All parties agree that this test should not be considered.

Prior to Busby's murder trial, Dr. Proctor, who was an expert witness for Busby at that trial, administered an IQ test to Busby in 2005.[74] Busby received a full scale IQ score of 77 on the WAIS-III.[75] JUDGE GRAVES'S opinion asserts that Dr. Proctor was retained and testified only as a mitigation expert. Had Dr. Proctor concluded that Busby was intellectually disabled, that would have been the ultimate basis for "mitigation." But, in Dr. Proctor's expert opinion, Busby was not intellectually disabled, and therefore, Busby did not pursue an intellectual disability claim at that time.

---

[72] *Brumfield v. Cain*, 576 U.S. 305, 313-14 (2015) (alterations in original).

[73] *Texas v. Busby*, No. W011911, at 17; ROA.4922.

[74] ROA.11000.

[75] ROA.11100, 11113.

Busby received a full scale IQ score of 77 on the WAIS-III that Dr. Proctor administered.[76] The SEM for the WAIS-III was approximately "plus or minus five," according to Dr. Proctor's trial testimony.[77] Using that SEM, Busby's IQ was in a range of 72-82. In 2022, the state's expert, Dr. McGarrahan, prepared a report in which she concluded that Busby's score of 77 on that WAIS-III administered by Dr. Proctor resulted in a range of 73-82.[78] Busby asserted in his second state habeas petition that due to the "Flynn Effect," the score of 77 should be adjusted to 73.7.[79] Dr. McGarrahan's report concluded that if the Flynn effect were considered, the score would be 74.[80]

Weeks after Dr. Proctor's assessment in 2005, the State's psychologist, Dr. Helge, re-administered the WAIS-III, and Busby scored 79.[81] The IQ range would be 74-84, based on that test and Dr. Proctor's understanding of its SEM. In 2022, the state's expert, Dr. McGarrahan, said in her report that after applying the SEM, the score of 79 on Dr. Helge's 2005 test would be 75-83, and if considering the Flynn effect, the score would be 76.[82]

Dr. Proctor administered another IQ test on the eve of trial in 2005—the Beta-III—on which Busby scored 81.[83] Dr. Proctor testified that this

---

[76] ROA.11100, 11113.

[77] ROA.11117.

[78] ROA.3511.

[79] ROA.4993.

[80] ROA.3512.

[81] ROA.11137.

[82] ROA.3512.

[83] ROA.11101, 11113.

score was "very consistent" with Busby's 2005 WAIS-III score.[84] The SEM for the Beta-III is not in the trial court record. However, in 2022, Dr. McGarrahan's report concluded that after applying the SEM, the range would be 72-90,[85] and considering the Flynn effect, the score would be 78.6.[86]

In 2010, another expert for Busby, Dr. Martinez, administered the WAIS-IV, resulting in a score of 74 and a range of 70-79, after applying the SEM.[87] Dr. McGarrahan's 2023 report says that considering the Flynn effect, the score would be 73.1.[88]

Twelve years later, in 2022, Dr. Martinez repeated the WAIS-IV, and Busby's Full Scale IQ score was 81.[89] Dr. McGarrahan's 2023 report reflects that after applying the SEM, the range would be 77-85, and when considering the Flynn effect, the score would be 76.5.[90] This latter test resulted in an IQ score above 75, even after applying the SEM.

In *Brumfield v. Cain*,[91] the Supreme Court indicated that an IQ score higher than 75, after considering the SEM (meaning that the lowest value in the IQ range was above 75), "could render the state court's determination [that a defendant had failed to establish he was intellectually disabled]

---

[84] ROA.11113.

[85] ROA.3512.

[86] ROA.3512.

[87] ROA.3512.

[88] ROA.3511.

[89] ROA.3508.

[90] ROA.3511.

[91] 576 U.S. 305 (2015).

reasonable."[92]   The Supreme Court similarly indicated in *Hall v. Florida*[93] that if the only IQ score, once the SEM is applied, is above 75 at the lower end of the range, that would not indicate intellectual disability, and a court would not have to consider whether there were deficits in adaptive functioning.[94]  The Court said, "For professionals to diagnose—and for the law then to determine—whether an intellectual disability exists once the SEM applies and the individual's IQ score is 75 or below the inquiry would consider factors indicating whether the person had deficits in adaptive functioning. These include evidence of past performance, environment, and upbringing."[95] However, the Supreme Court also said in *Hall* that, "when a person has taken multiple tests, each separate score must be assessed using the SEM, and the analysis of multiple IQ scores jointly is a complicated endeavor."[96]  Accordingly, I think it prudent to consider all that each of the experts have said about the IQ tests as well as deficits in adaptive functioning.

For ease of reference, and to summarize the various IQ scores and adjustments Dr. McGarrahan would apply, I include an insert with a table from Dr. McGarrahan's 2023 report:

---

[92] *Id.* at 316.

[93] 572 U.S. 701 (2014).

[94] *Id.* at 714, 722.

[95] *Id.* at 714.

[96] *Id.*

Intellectual Deficits: IQ Testing of Mr. Busby (in chronological order):

Mr. Busby has undergone several intelligence tests. The following is a summary of those assessments.

| Date & Examiner | Test Given & Year Normed | FSIQ | Percentile Rank | 95% Confidence Interval | Considering Flynn Effect (.3 points per year) |
|---|---|---|---|---|---|
| 1/1/2001 (Unknown examiner) | Unknown test in TDCJ | 96 | 39th | Approximately 91-101 | Unknown |
| 10/14/2005 (Dr. Tim Proctor) | WAIS-III (1995) | 77 | 6th | 73-82 | 74 (.3 x 10 = 3) |
| 11/4/2005 (Dr. Tim Proctor) | Beta-III (1997) | 81 | 10th | 72-90 | 78.6 (.3 x 8 = 2.4) |
| Unknown date but said was given "weeks" after Dr. Proctor's WAIS-III (Dr. Sven Helge) | WAIS-III (1995) | 79 | 8th | 75-83 | 76 (.3 x 10 = 3) |
| 2/11/2010 (Dr. Gilbert Martinez) | WAIS-IV (2007) | 74 | 4th | 70-79 | 73.1 (.3 x 3 = .9) |
| 2/25/2022 (Dr. Gilbert Martinez) | WAIS-IV (2007) | 81 | 10th | 77-85 | 76.5 (.3 x 15 = 4.5) |

[97]

The state habeas trial court and the TCCA acknowledged that "[p]ractice effects and the 'Flynn Effect' may affect test scores," but noted "[t]hey do not operate to change an individual score."[98] The state court's decision not to adjust the scores for the Flynn effect was not an unreasonable determination of the facts. Neither this court nor the Supreme Court has recognized that the Flynn effect requires the adjustment of individual IQ

---

[97] ROA.3511.

[98] *See Ex parte Busby*, No. WR-70,747-06, 2025 WL 702111, at *1 (Tex. Crim. App. Mar. 5, 2025) (adopting trial court's findings of fact, with exceptions); *Texas v. Busby*, No. W011911, at 11 (2d Crim. Dist. Ct., Tarrant County, Tex. Oct. 12, 2023) (trial court's discussion of Flynn effect); ROA.4916-17.

scores in an *Atkins* claim.[99]   The Supreme Court has observed that the Flynn Effect is "controversial."[100]

As to the practice effect, Dr. Martinez used that concept to opine that Busby's score of 81 on the 2022 WAIS-IV should be lowered to approximately 74.  Dr. McGarrahan said that the practice effect could affect IQ scores, but she did not adjust Busby's 81 score on the 2022 test in that regard.  The state habeas trial court found that Dr. Martinez did not explain how he derived the practice effect to lower Busby's score from 81 to 74.[101] That court concluded that this adjustment was "arbitrary" and that "no guidelines, no quantitative measures, and no limits" had been shown."[102] The state habeas trial court concluded that "The evidence of the practice effect, such as there is, is not credible, and the Court will not attempt to apply an unspecified practice-effect number to Busby's scores."[103]   This assessment of the evidence was not unreasonable.  Even if there is general recognition among experts that there may be a practice effect when an IQ test is administered more than once within a year, there is no evidence in the record before us as to how the practice effect could be quantified, much less a scientifically sound explanation as to how a quantification of an adjustment

---

[99] *See Brumfield v. Cain*, 808 F.3d 1041, 1060 n.27 (5th Cir. 2015) ("The State correctly points out that the Fifth Circuit has not recognized the Flynn effect."); *Smith v. Duckworth*, 824 F.3d 1233, 1246 (10th Cir. 2016) ("*Atkins* does not mandate an adjustment for the Flynn Effect . . . and no decision of the Supreme Court squarely addresses the issue.") (citation modified); *Black v. Carpenter*, 866 F.3d 734, 745 (6th Cir. 2017) ("[N]either *Brumfield* nor *Hall* imposes any such requirement—indeed, neither case even mentions the Flynn Effect.").

[100] *Dunn v. Reeves*, 594 U.S. 731, 736 (2021).

[101] *Texas v. Busby*, No. W011911, at 26-27; ROA.4931-32.

[102] *Texas v. Busby*, No. W011911, at 27; ROA.4932.

[103] *Texas v. Busby*, No. W011911, at 27; ROA.4932.

could be quantified. Further, there is no generally accepted scientific evidence cited in this record that there is a practice effect when the same test is administered many years apart.

The state habeas trial court and TCCA considered the adaptive behavior evidence put forth by Dr. Martinez in his 2022 report[104] and discussed in Dr. McGarrahan's 2023 report.[105] At this point, the analysis boils down to a disagreement among the experts. Prior to the trial in which Busby was convicted of murder, Busby's expert Dr. Proctor administered the Wide Range Achievement Test (WRAT), Third Edition, which measured Busby's educational abilities in reading, spelling and math.[106] Busby tested at the fourth-grade level in reading, third-grade level in spelling, and sixth-grade level in math.[107] Dr. Proctor testified at trial that Busby was not intellectually disabled, and that the state's expert, Dr. Helge, agreed that Busby was not intellectually disabled.

In 2010, Dr. Martinez's report concluded that Busby's IQ was "borderline."[108] Dr. Martinez did not opine at that time that Busby was intellectually disabled. Twelve years later, in a subsequent report, Dr. Martinez relied on interviews and affidavits from individuals who knew Busby, as well as two ABAS-III standardized questionnaires completed by Busby's sisters after he was convicted and received a death sentence, and after he first asserted an *Atkins* claim.[109] The state habeas trial court

---

[104] ROA.3484-3509.

[105] ROA.3510-3515.

[106] ROA.11101.

[107] ROA.11111-12.

[108] ROA.4344.

[109] ROA.3492-3508.

considered this evidence but found it to be "internally inconsistent."[110] The trial court weighed the credibility of this evidence in light of the sources and context of the evidence and concluded "that the preponderance of the adaptive-deficit evidence is, at best, conflicting and, at worst, suspect."[111] With respect to objective measures of Busby's adaptive deficits, the state habeas trial court observed in the remanded state court proceedings:

> Proctor administered a wide-range achievement test (WRAT) to Busby in 2005. [36 RR 42] That test showed his reading skill was at a fourth-grade level, spelling skill was at a third-grade level, and math skill was at a sixth-grade level. [36 RR 51-52] Martinez's 2022 WRAT had similar results. [Busby Proposed FOF & COL Ex. A, at 7] Proctor testified that although these results showed a learning disability, Busby is not intellectually disabled. [36 RR 51, 64] Martinez concluded the opposite. [Busby FOF & COL Ex. A, at 26][112]

The state habeas trial court discussed conflicting evidence regarding Busby's adaptive deficits and concluded Busby had failed to establish that he was intellectually disabled by a preponderance of the evidence. The court based these findings not only on the full record, but also on its "own recollections and credibility determinations."[113] The TCCA adopted those findings and

---

[110] *Texas v. Busby*, No. W011911, at 36; ROA.4941; *see Ex parte Busby*, No. WR-70, 747-06, 2025 WL 702111, at *1 (Tex. Crim. App. Mar. 5, 2025) (adopting trial court's findings of fact, with exceptions).

[111] *Texas v. Busby*, No. W011911, at 38; ROA.4943.

[112] *Texas v. Busby*, No. W011911, at 32; ROA.4937.

[113] ROA.4948.

conclusions. Again, I cannot say this decision "was based on an unreasonable determination of the facts in light of the evidence presented."[114]

\*     \*     \*

For the foregoing reasons, I would grant the COA, affirm the district court's judgment, deny Busby's habeas petition, and deny the stay of execution.

---

[114] 28 U.S.C. § 2254(d).

JAMES E. GRAVES, JR., *Circuit Judge*, concurring in part, dissenting in part.

Edward Lee Busby filed a Rule 60(b) motion for relief from judgment in the district court seeking to reopen his federal habeas after he was denied necessary funding for an expert on his intellectual disability. *See* Fed. R. Civ. P. 60(b). The district court denied relief and transferred the motion to this court as a successive habeas petition. Busby appeals the district court's findings that the motion constitutes a successive habeas petition, that it was untimely, and that it does not present the extraordinary circumstances required for Rule 60(b) relief. Busby further seeks a Certificate of Appealability (COA) and a stay of execution. The state has filed opposition, asserting that the district court was correct. Separately, Busby has timely filed a Motion for Order Authorizing Consideration of Second Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2244. Because I would also grant a stay, I concur in part. However, I disagree with footnote one, and I would also grant a COA and grant Busby's requested relief. Thus, I respectfully concur in part and dissent in part.

In 2011, the district court denied Edward Lee Busby's application for necessary funds to obtain an expert for purposes of pursuing his claim under *Atkins v. Virginia*, 536 U.S. 304 (2002). *See* ECF NDTX 4:09-cv-00160, 55; *see also* 18 U.S.C. § 3599(f). Indeed, in affirming the district court's denial of relief, this court repeatedly pointed to the lack of expert testimony that Busby is intellectually disabled. *See Busby v. Davis*, 925 F.3d 699, 706, 717, 718, 720 (5th Cir. 2019).[1]

In 2018, the Supreme Court decided *Ayestas v. Davis*, 584 U.S. 28, 45-46 (2018), holding that this circuit's requirement that a movant show a

---

[1] That is the reason I concurred in the judgment only.

"substantial need" to demonstrate that funds were "reasonably necessary" was not supported by the text of 18 U.S.C. § 3599. Thereafter, the state court granted Busby the necessary funding to pursue his claim. However, the state court ultimately denied habeas relief. Busby then returned to district court with this Rule 60(b) motion to reopen his federal habeas and pursue the *Atkins* claim with the necessary evidentiary support. *See* Fed. R. Civ. P. 60(b). The district court denied Busby's relief and transferred the motion to this court as a successive habeas petition. Busby appeals the district court's findings.

Judge Richman's opinion grants a COA and says that it assumes without deciding that Busby's motion is not a successive habeas petition. I agree that a COA should be granted and that Busby's Rule 60(b) motion is not a successive habeas petition. *See Gonzalez v. Crosby,* 545 U.S. at 535-36, 538; *see also Crutsinger v.* Davis, 929 F.3d 259, 265-66, 268 (5th Cir. 2019); *Buck v. Davis*, 580 U.S. 100, 124 (2017). But she and I then part ways. To be clear, my writing is in no way intended to minimize the seriousness of the heinous crime for which Busby has been convicted or its impact on the family and loved ones of Laura Crane. *See Busby v. State*, 253 S.W.3d 661, 663 (Tex. Crim. App. 2008). I am simply applying established law in deciding whether he is eligible for execution under the Eighth Amendment.

Judge Richman then reviews the trial court's decision under 28 U.S.C. § 2254(d). As she states, intellectual disability must include (1) intellectual functioning deficits, (2) adaptive skills deficits, (3) the onset of which occurs prior to age 18. Further, as she acknowledges, both Busby's expert, Dr. Gilbert Martinez, and the state's expert, Dr. Antoinette McGarrahan, reached the conclusion that Busby's intellectual disability renders him ineligible for execution. As she also concedes, the state submitted proposed findings of fact and conclusions of law to find Busby

intellectually disabled under *Atkins* and reform his sentence to life in prison. But the state trial court did not adopt those findings and conclusions that were informed by the medical experts. Instead, the trial court relied on its own recollections and credibility determinations from a trial that did not consider intellectual disability.

Judge Richman states that "[t]he state trial court judge who presided over Busby's 2005 jury trial was the same judge who conducted the September 9, 2023 hearing on Busby's most recent *Atkins* submission in state court." In the footnote citation, she states:

> *See Texas v. Busby*, No. W011911, at 1 (2d Crim. Dist. Ct., Tarrant County, Tex. Oct. 12, 2023) (reflecting that the court considered "the Court's personal recollections and credibility determinations" in ruling on the most recent state habeas submission); *id* . at 43 ("Based on this Court's review of the law, the presented evidence, the parties' arguments, and this Court's own recollections and credibility determinations, this Court RECOMMENDS that relief be denied.").

Richman Op. n. 57.

In the very next footnote, she offers a citation for *Moore v. Texas*, 586 U.S. 133, 139 S.Ct. 666, 668 (2019) (*Moore II*). *See* n. 58. In an earlier opinion of that case, the United States Supreme Court granted certiorari in part and vacated the Texas Court of Criminal Appeals (TCCA) denial of habeas relief. *See Moore v. Texas*, 581 U.S. 1 (2017) (*Moore I*). In doing so, the Supreme Court reiterated: "As we instructed in *Hall*, adjudications of intellectual disability should be 'informed by the views of medical experts.'" *Id*. at 5 (quoting *Hall v. Florida*, 572 U.S. 701, 709, 721 (2014)). "That instruction cannot sensibly be read to give courts leave to diminish the force of the medical community's consensus." *Id*. at 5, 6. Further, the Court held that the *Briseno* factors then-considered by Texas courts in evaluating *Atkins*

claims were based on superseded medical standards that "create an unacceptable risk that a person with intellectual disabilities will be executed." *Id.* at 6 (internal marks and citation omitted). While Texas no longer uses the *Briseno* factors, they were in effect during previous litigation of Busby's case. Further, the trial court and Judge Richman are "diminishing the force of the medical community's consensus" regarding Busby's intellectual disability and creating "an unacceptable risk that a person with intellectual disabilities will be executed" in violation of the Eighth Amendment by substituting their own opinions for those of the medical experts. *See Moore I*, 581 U.S. at 5, 6. The medical community's consensus here is that Busby is intellectually disabled and ineligible for execution. Every intellectual disability expert to have offered an opinion in this matter has concluded that Busby is intellectually disabled. This is not a situation where one expert says he is and one expert says he is not. Moreover, the state properly attempted to concede the issue in the state trial court based on the evidence. But the state trial judge refused to accept the medical community's consensus and chose to rely on his own "recollections." Judge Richman now attempts to go back through previous evidence that was not offered for the purpose of establishing whether Busby is intellectually disabled and somehow contradict the only medical experts to have offered reports on whether Busby is intellectually disabled. There is no support for such a proposition. She also offer no support to establish that a trial judge's "recollections" of a trial some 20 years ago somehow carry more weight than any actual expert offered by either the state or the defense. There was no *Atkins* issue at trial. The only evidence that remotely touches on the issue was offered for mitigation. Regardless, the medical experts have included all of that evidence in their comprehensive reviews which form the basis for their respective conclusions and the consensus of the medical community. All of which, she ignores.

For purposes of her report, McGarrahan reviewed: the raw psychological test data from Dr. Timothy Proctor's pre-trial examination on October 14 and November 4 of 2005; the affidavit of Dr. Gilda Kessner, dated March 21, 2008; the reports, assessments and test results from Martinez from February 11, 2010, and July 11, 2022; the declaration of Dr. Bekh Bradley-Davino, dated May 19, 2010; various records, including school records and Texas Department of Criminal Justice records; and the 2021 habeas application and its exhibits. She also conducted clinical interviews or assessments with various other individuals. Martinez likewise considered all of that and more, along with assessing Busby in person.

In analyzing the applicable IQ scores, Judge Richman and the state court rely heavily on evidence not offered at the time for purposes of establishing intellectual disability. For example, Judge Richman discusses Proctor's assessment in 2005 and Busby's full scale IQ score of 77 on the WAIS-III. Proctor was hired as a mitigation expert, not an intellectual disability expert. Additionally, the definitions and factors to be considered have changed since then. Regardless, both of the intellectual disability experts considered the evidence from Proctor's assessment under the now-applicable law and offered expert opinions that Busby is intellectually disabled.

Regarding the above-referenced 2005 WAIS-III examination, Judge Richman is correct that the full scale score was 77, with a standard error of measurement (SEM) of approximately plus or minus five, and that using that SEM would result in a range of 72-82. She then says that that "McGarrahan's report concluded that if the Flynn effect were considered, the score would be 74." While that is what her report states, Judge Richman neglects to say that a 74 would result in a range of 69-77 based on the SEM. Further, McGarrahan's report also stated: "The confidence interval, at the

lower end, is in the intellectual disability range referenced above (generally 65-75), even without adjusting for or considering the Flynn effect." It is unclear how she arrived at 73 after subtracting 5 from 77, though.

Regarding each score that is discussed, Judge Richman takes the full scale score and then states what it would be if *either* the SEM *or* the Flynn effect were considered. Even though Busby has sufficient scores in the intellectual disability range without considering the Flynn effect, if the Flynn effect were to apply, then the SEM would still be applied to that adjusted full scale score. For example, just weeks after Proctor's assessment, the state's psychologist readministered the same WAIS-III and Busby scored 79.129. While that is a textbook example of the Flynn effect, even without it, that score would put Busby in the intellectual disability range with 74-84. With the Flynn effect, as McGarrahan said, a 76 score would put Busby in the 71-81 range.

Busby scored 81.130 on the Beta-III in 2005. Judge Richman notes that Proctor correlated this with his 2005 WAIS-III score. Further, she states that "[t]he SEM for the Beta-III is not in the trial court record. However, in 2022, Dr. McGarrahan's report concluded that after applying the SEM, the range was 72-90, and considering the Flynn effect, the score would be 78.6." After applying the SEM, as we are required to do, this score is within the intellectual disability range without considering the Flynn effect.

As the Supreme Court has said, "IQ test scores should be read not as a single fixed number but as a range." *Hall,* 572 U.S. at 712. "A test's SEM is a statistical fact, a reflection of the inherent imprecision of the test itself." *Id.* at 713. "The SEM reflects the reality that an individual's intellectual functioning cannot be reduced to a single numerical score." *Id.* The Court has further said:

Even when a person has taken multiple tests, each separate score must be assessed using the SEM, and the analysis of multiple IQ scores jointly is a complicated endeavor. . . . In addition, because the test itself may be flawed, or administered in a consistently flawed manner, multiple examinations may result in repeated similar scores, so that even a consistent score is not conclusive evidence of intellectual functioning.

*Id*. at 714 (internal citations omitted).

The Supreme Court reiterated:

For professionals to diagnose—and for the law then to determine—whether an intellectual disability exists once the SEM applies and the individual's IQ score is 75 or below the inquiry would consider factors indicating whether the person had deficits in adaptive functioning. These include evidence of past performance, environment, and upbringing.

*Id*. The Court also noted that a significant majority of states "implement the protections of *Atkins* by taking the SEM into account, thus acknowledging the error inherent in using a test score without necessary adjustment. This calculation provides 'objective indicia of society's standards' in the context of the Eighth Amendment." *Id*.

Busby has only one score that places him just barely outside the intellectual disability range—the WAIS-IV from 2022 with a full scale score of 81. After the SEM, the range would be 77-85. If the Flynn effect was considered, the full scale score would be 76.5. If we considered the Flynn effect, we would then apply the SEM to 76.5, resulting in a range of 72.5-80.5. Regardless, even if we do not consider the Flynn effect, the Supreme Court has made clear that one or even two scores outside the intellectual disability range are not sufficient to discount the lower ranges of other scores. *See Moore I*, 581 U.S. at 10.

Moreover, there are additional factors that must be considered. Judge Richman also largely discounts all of the evidence offered regarding Busby's adaptive skills deficits, contrary to the consensus of medical experts. The only experts to have evaluated Busby for such a determination both offered detailed explanations supported by evidence, records, and case law for their determinations. Simply not believing it or claiming it seems "conflicting and, at worst, suspect," as the state court did, without establishing how or why does not overcome it. For these reasons, I respectfully concur in part, and dissent in part.